No. 2339
Second Circuit

---

CLARENCE   B.   KAGLE   v.   JOHN   A. TUDOR

(December 17, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Laws—Par. 10; Master and Servant—Par. 154.**

Act 247 of 1920, amending Section 22 of Act 20 of 1914, the Workmen's Compensation Act, is unconstitutional and, therefore, double liability of the defendant employer cannot be enforced. Lehner vs. Mader, 153 La. 1042, 97 South. 34.

2. **Louisiana Digest—Mandate—Par. 10.**

Where one by his conduct allows others to believe that a certain party is his agent for the purposes of employing and directing labor, he is estopped from denying the agency.

Appeal from Sixth Judicial District Court of Louisiana, Parish of Tensas. Hon. F. X. Ransdell, Judge.

This is a suit brought by an injured employee for compensation under Section 8, Subsection 1 (b), of Act 20 of 1914, as amended by Act 43 of 1922.

There was an exception no cause of action filed, which was overruled.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Richard K. Boney, of Tallulah, attorney for plaintiff, appellee.

Tullos & Wade, of Vidalia, attorneys for defendant, appellant.

ODOM, J. This is a suit under the Workmen's Compensation Act (Act No. 20 of 1914 and amendments).

Plaintiff alleges that he was employed by defendant through his agent, Dinger, to operate a Fordson tractor, and that on September 24, 1923, while operating said tractor, he received an injury which totally and permanently disabled him from doing work of any reasonable character; and he brings this suit to recover 60 per cent of his wages for 400 weeks.

The defendant filed an exception of no cause of action, which was overruled.

Reserving his right under the exception, defendant filed answer in which he denied the allegations set out in each article of plaintiff's petition, except the article setting forth that defendant had been notified of the accident and had refused to make settlement, which was admitted.

There was judgment in the District Court in favor of plaintiff and against defendant for the lump sum of $1890.00.

The plaintiff was receiving wages of $1.50 per day, or $9.00 per week. The judgment is based upon the finding by the court that plaintiff had lost the use of his leg and, under Act 43 of 1922, the permanent total loss of the use of a member is equivalent to amputation of that member, and for the loss of a leg the employee shall be entitled to 60 per cent of his wages during 175 weeks. The court, therefore, awarded plaintiff compensation at 60 per cent of $9.00, or $5.40, per week for 175 weeks; but, inasmuch as defendant had not complied with the provisions of Act 247 of 1920, the amount was doubled.

The defendant has appealed.

The plaintiff has not answered the appeal nor has he filed a motion to amend the judgment.

## ON EXCEPTION OF NO CAUSE OF ACTION

Defendant's counsel did not argue the case orally before the court but submitted it on brief. As the exception of no cause of action is not referred to in his brief, we are not informed as to what is the alleged ground for the exception. We have considered the question, however, and are of the opinion that the exception was properly overruled.

## ON THE MERITS

The court allowed plaintiff twice the amount of compensation provided by the Workmen's Compensation Act, under the provisions of Section 22 of Act 247 of 1920. In doing so, the court evidently overlooked the fact that said section of that act was declared unconstitutional by the Supreme Court in the case of Zehner vs. Mader, 153 La. 1042, 97 South. 34.

Counsel for plaintiff, in oral argument before the court, conceded that the action of the lower court in doubling the amount of the compensation was error; but he acquiesces in the court's finding that the plaintiff is entitled to compensation during the period of only 175 weeks under Act 43 of 1922 for the loss of the use of a leg.

Counsel for defendant, in brief, says that the fact that plaintiff received a serious injury to his leg is not questioned, but he contends that plaintiff's testimony, uncorroborated on that point, is not sufficient to warrant the court in holding that the injury was caused by the tractor, and he refers to the testimony of Mr. Scott, sworn for defendant, who says that the clutch could not have flown back so as to knock plaintiff's leg into the wheel.

Plaintiff testified that while operating the tractor he attempted to reverse the gear and that the clutch few back, throwing his leg into the wheel, and that his leg was broken in the wheel.

Mr. Scott testified that it is impossible for one operating a tractor to get his leg into the wheel unless he put it there. But he was asked if the leg could get into the wheel accidentally, and he said it could.

Whether plaintiff's leg was thrown into the wheel by the clutch or whether it was caught in some other way, we think, makes no difference, as we think the testimony fully warrants us in holding that in some

way, while operating the tractor, he did get his leg broken accidentally.

Of course, if it is shown that plaintiff swore falsely as to the manner in which his leg was caught in the wheel, that fact fact might weaken his testimony. But, in view of his testimony that his leg was broken by the wheel, and the further fact that there is no suggestion or intimation on the part of anyone that the accident did or could have happened in any other way, we are warranted in accepting his version of it. The fact that plaintiff was operating the tractor on that occasion and that he was injured is not disputed by anyone.

The defendant seriously contends that he did not employ plaintiff to operate the tractor and therefore is not liable.

Defendant owned the plantation on which the plaintiff was working but did not live there. He says he employed a young man named Dinger to operate the tractor because he was recommended to him as an experienced man for that work, and that he did not authorize him to put anyone else in charge of it.

It is not disputed that Dinger employed plaintiff and set him to work operating the tractor, but defendant claims that Dinger's act in doing so was wholly unauthorized by him and that he is not bound by Dinger's act.

Dinger was not called as a witness, nor was his testimony taken by commission, as it might have been.

But, conceding that defendant did not authorize Dinger to employ plaintiff to operate the tractor, we think his conduct with reference to conduct of the business on the plantation was such as to bind defendant for Dinger's act in that respect. As stated, defendant did not reside on the plantation, but he employed and put Dinger in charge of his affairs there. He did authorize Dinger to employ hands to reclaim and cultivate a portion of the land which he owned. Dinger employed the hands, fixed their compensation and directed their work. He made out the payrolls and sent them to defendant, whereupon defendant forwarded to him the funds necessary to make the payments.

Defendant says he told Dinger to employ only colored men from adjoining plantations to do the work; but he gave no directions as to who should be employed, except that they should be colored men. But the testimony shows that Dinger did employ the plaintiff and that defendant was on the place during plaintiff's employment and saw him at work and made no objection to his employment. All the testimony shows' that Dinger was in full charge of and managed the affairs of the place.

Doctor Noble, a physician residing at Newellton in that parish, was asked about who had charge of the place, and he said Dinger was manager in 1922 and 1923, and that he saw Dinger in the fields directing the farm work, that he lived in the residence set apart for the manager of the place, and that Dinger called him as physician to attend the hands during their illness.

W. C. May, who lives in the neighborhood, saw Dinger on the place looking after affairs generally.

M. E. Cupples testified that defendant told him in 1924 that he had Dinger as manager in 1923 and that he let the houses go down.

Oscar Burton, sworn for defendant, says he heard defendant tell Dinger not to permit the plaintiff to operate the tractor; but that plaintiff was not present and did not hear such instructions. He says, however, that plaintiff did operate the tractor several days under Dinger's instructions.

There is no testimony to show that plaintiff was ever told that defendant objected to his operating the tractor, nor is there any suggestion that he knew that he was in charge thereof contrary to the instructions of defendant.

We must, therefore, assume, under the circumstances, that plaintiff accepted the work in good faith, thinking that Dinger had authority to employ him and put him in charge of the tractor.

Defendant by his conduct allowed plaintiff and others to believe that Dinger was his agent for the purposes of employing and directing labor. He is now estopped from denying the agency.

Airey vs. Okolona Savings Institution, 33 La. Ann. 1346.

State vs. Irvine, 126 La. 435, 52 South. 567.

"Agency may be implied by holding out another as his agent, or by investing him with apparent authority, and he thereby becomes liable for such agent's acts."

Meyer vs. King, 29 La. Ann. 567.

Nor can secret instructions affect third persons who deal in good faith with an apparent agent.

Chaffe vs. Barataria Canning Co., 113 La. 215, 36 South. 943.

Here it is not a question as to what secret instructions defendant had given Dinger but what plaintiff, a third person, has a right, under the circumstances, to assume was Dinger's authority.

Dinger was in charge of the place, was employing hands to operate it, fixed their compensation and directed their work.

Plaintiff had a right to assume that Dinger had authority to put him at work in charge of the tractor.

On the whole subject matter, see 2 Corpus Juris, pages 441, 461, 566, 572, 574 and 921.

Also Richardson vs. Springfield Insurance Co., 114 La. 802, 38 South. 563.

With reference to the injury, the proof shows that plaintiff had his right leg broken between the knee and the ankle. Immediately following the accident he went to a hospital in Natchez, Mississippi, where he remained for about seven months. Doctor Noble, a physician, who examined him in September, 1924, more than a year after the accident, said, with reference to the injury:

"No union of the tibia at all; the leg is much shorter and the patient is unable to walk without crutches."

He said he was not able to do any work at all and gave it as his opinion that he is permanently injured; and he further says:

"Well, sir, there might be a possibility, by using an application of some kind, as a steel plate, or something of that kind. It might be fixed so that it would support the weight of his body, but it is impossible for the bones to unite on account of the distance between them that cannot be approximated."

The plaintiff was receiving $9.00 per week. The court held that he had lost the use of a leg which is equivalent to the amputation thereof and was entitled to compensation at 60 per cent of his wages for 175 weeks under Act 43 of 1922. Plaintiff does not complain at the lower court's finding nor has he moved to amend the judgment. As above stated, it was error to double the compensation and to order in a lump sum.

For the reasons assigned, it is ordered that the judgment appealed from be amended so as to read as follows: It is ordered, adjudged and decreed that plaintiff, Clarence B. Kagle, have judgment against defendant, John A. Tudor, for compensation at $5.40 per week for a period of 175 weeks, beginning two weeks after the date of the accident on September 24, 1925, the payments to bear interest at 5 per cent from the date they were due until paid; defendant to pay all costs.