827 So.2d 623 (2002)
Dallas FLEMING
v.
ACADIAN GEOPHYSICAL SERVICES, INC., et al.
No. 02-264.
Court of Appeal of Louisiana, Third Circuit.
October 2, 2002.
*626 M. Charles Brandt, Jr., Lafayette, LA, for Plaintiff/Appellee, Dallas Fleming.
Adams & Reese, J. Wendall Clark, Baton Rouge, LA, for Defendant/Appellant, Acadian Geophysical Inc.
Court composed of BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, and MICHAEL G. SULLIVAN, Judges.
WOODARD, Judge.
Acadian Geophysical Services, Inc. (Acadian) appeals the jury's $145,000.00 verdict in Mr. Dallas Fleming's favor. The jury found that he was entitled to damages for Acadian's breach of its agreement, hiring him to perform accounting and auditing services for Acadian for a four year term. We affirm.

* * * * * *
Acadian surveys and records seismic activities in order to pinpoint potential drilling sites for oil companies. When Mr. Fleming began working for it, the company was just getting started and, basically, Mr. Fleming was its accounting department. Initially, he signed a non-disclosure agreement for Acadian but was working without a contract. He performed his duties, both, from his own office in Lafayette and at Acadian's office in St. Martinville. Shortly after he began working for Acadian, its board adopted a Corporate Resolution, authorizing two of its officers to contract with Mr. Fleming for his services. The officers were to work out the contract's terms and conditions, subject to unanimous shareholder approval. One of these officers, then, delegated this responsibility to James McGehee, Acadian's Chief Executive Officer at that time. Mr. McGehee enlisted the help of Edmund Guidry, who normally reviewed all of Acadian's contracts, and the two drafted an agreement to present to Mr. Fleming. The resulting contract, which expressly incorporates the Corporate Resolution, essentially, consisted of the following language:
A. That Acadian Geophysical Services, Inc. does hereby contract Dallas Fleming, to be an outside accountant & auditor for the term of four (4) years, effective this 1st day of January 1998 and terminating, December 31, 2001.
B. Mr. Fleming herein, will be compensated $4,000.00 per month for the first year, with annual increases of not less than 10% effective each anniversary date of this contract. Furthermore, Acadian Geophysical Services, Inc., agrees to pay his and his spouse and children's health insurance-Anthem Health and Life Insurance Company.
Mr. Fleming had specifically asked about health insurance for himself and his family, but Acadian, not Mr. Fleming, proposed the contract's duration, the compensation, and the provision for annual increases. Less than six months into the contract, Acadian became a subsidiary of another company, Petroleum Geo Services ASA (PGS), a Norwegian company with offices in Houston, Texas. Mr. Fleming continued performing services for Acadian for about another six months when Acadian informed him that it was moving its accounting division to its office in Houston, and, thereafter, he would have to perform his duties there. He told Acadian that he could not move to Texas, and Acadian responded with a letter, giving him a deadline to report to the Houston office. When he did not report by the deadline, Acadian advised him that they considered his contract to be terminated. Mr. Fleming initiated suit against Acadian and PGS for breach of contract. A directed verdict was entered in PGS's favor and is not challenged in this appeal.
*627 After trial in this matter, the court instructed the jurors and presented them with a verdict form/interrogatories to help them reach a verdict. When the jury returned this form, its interrogatory responses were inconsistent. Thus, the court clarified the instruction and sent the jury back to deliberate, further. Immediately, the jury returned, having fixed the inconsistency, and announced that they had made a clerical error.

ASSIGNMENTS OF ERROR
We must decide 1) whether the jury misapplied contract law in finding that Acadian breached, or alternatively, whether the jury was clearly wrong in applying the facts 2) whether the trial court erred in denying Acadian's motion for JNOV, offered on the basis that the jury clearly misinterpreted the applicable law 3) whether the trial court erred in failing to grant Acadian's motion for mistrial once the jury returned with inconsistent interrogatory/verdict responses 4) whether the trial court erred in submitting additional charges to the jury and erred in the substance of the specific supplemental charge given and 5) whether the trial court erred in failing to grant Acadian's post-judgment motion for new trial, offered on the basis that confusion resulted from the jury charges and deliberations.

SUB-CONTRACTOR AGREEMENT
Initially, we must address whether the jury misapplied contract law in finding that Acadian breached the contract or, alternatively, whether the jury was clearly wrong in applying the facts.
The common intent of the parties guides the interpretation of a contract.[1] If the words of a contract are clear, explicit, and lead to no absurd results, its interpretation is constrained to the "four corners" of the document.[2] No further interpretation is needed when intent is clear.[3] The court must determine whether the words of a contract are clear or whether they are ambiguous because this is a question of law, not fact.[4] Additionally, where the trial court is faced with undisputed or uncontroverted facts, the proper standard of review is whether it made a legal error.[5] Acadian urges the application of the legal error standard because the Sub Contractor agreement contains no express provision which limits the geographic area of Mr. Fleming's performance.
Notwithstanding, we disagree that this case presents us with undisputed or uncontroverted facts. We find that this "bare bones" contract provides no expression or implication of the parties' intent within its four corners. The contract is silent as to the required location of the work, as well as to many issues which might arise, concerning Mr. Fleming's contractual performance. When the words of a contract do not address a specific situation, we must examine, not only, the words of the contract but, also, the surrounding circumstances to determine if the parties intended to include any implied incidental obligations in that situation.[6] Thus, the trial court was correct in hearing testimony, regarding the circumstances surrounding *628 the parties at the time of contracting to discern their intention.
Thus, we turn to the parties' subjective intent. Evaluating the evidence to assess the parties' subjective intent is a task for the trier of fact, and the jury's determination of their intent is entitled to great weight.[7] In reviewing the jury's finding, we must apply the manifest errorclearly wrong standard.[8] In other words, to reverse the jury's finding, we must conclude that there is no factual basis in the entire record for its determination and that such is clearly wrong or manifestly erroneous.[9] It is not for us to decide whether the jury was right or wrong; the issue is whether its conclusion was reasonable.[10]
We cannot say that, after having heard the evidence, the jury's conclusion that the parties had reached a meeting of the minds, concerning the location of Mr. Fleming's performance was unreasonable. Foremost, it is well settled that any doubts or ambiguities in the contract should be construed against Acadian, as it is the party who drafted the document.[11] When the parties do not make provision for a particular situation, we must assume that they intended to bind themselves to the express provisions of the contract, as well as to whatever law, equity, or usage regards as implied in the type of contract at issue.[12]
Therefore, the jury could have found that the parties intended that Mr. Fleming, not Acadian, would decide where he would perform the work, simply, because they found him to be an independent contractor and, thus, entitled to make that decision. In fact, Mr. LeBlanc, who was president of the corporation as well as one of the officers who was designated to contract with Mr. Fleming, testified:
Q. Okay. Now he was an independent contractor; right?
A. Yes, right.
Q. What do you consider an independent contractor to be?
A. A non-employee that got paid for his services.
Q. And does he do the work in the manner that he deems fit?
A. Yes.
Q. That's what an independent contractor is; right?
A. Correct.
Designating one as an independent contractor indicates that he is free to employ whatever means he chooses in order to do his job.[13] Thus, as an independent contractor, Acadian would have had no right to direct or control the manner in which Mr. Fleming was to perform the services, as long as the result was satisfactory.[14]
Additionally, some of Acadian's officers, who were involved in drafting and presenting the contract to Mr. Fleming testified, either, that they understood that he would perform the work in St. Martinville or *629 Lafayette or, at least, that he would not be expected to do the work in another state.
However, relying on Chaffe v. Barataria Canning Co.,[15] Acadian argues that even though, initially, Acadian had no objection to Mr. Fleming's working in Louisiana, this did not, necessarily, form a term or condition of the contract. In Chaffe, the trial court made a factual determination against such an inference, where the verbal contract, at issue, was based on an experimental extension of Barataria's canning business. The court found that the parties did not intend for the contract to last for any certain period of time, and, therefore, either party could terminate it at any time. Conversely, Mr. Fleming's contract clearly was for a duration of four years, and, unlike in Chaffe, where the company's officers contradicted Chaffe's testimony, regarding the contract's intended duration, Acadian's officers did not contradict Mr. Fleming's allegation that the parties had an understanding of where he would perform the work. Furthermore, one of the officers, who was designated in the Corporate Resolution to execute Mr. Fleming's contract, testified that he did not expect Mr. Fleming to have to move to Houston to perform his contract.
Accordingly, we find that it was proper for the jury, sub judice, to infer that the parties intended such a term.
Acadian, also, argues that even if the intent, both, of Mr. Fleming and of the officers, who drafted the contract, was that performance of Mr. Fleming's services would be geographically limited, the shareholders did not unanimously approve such a term. Notwithstanding, the shareholders, specifically, granted to these officers the authority to act as agents for the corporation in working out the terms of the contract. Since these agents drafted the contract based on the shareholders' authority, the ambiguities in the contract are to be construed against the corporation, as a whole.
Accordingly, we cannot say that the jury's finding, that both parties intended to include a term, concerning the location of Mr. Fleming's performance, was an unreasonable one. Likewise, the jury was not unreasonable in finding that Acadian breached this term by giving Mr. Fleming an ultimatum, which required him, either, to perform his duties in Houston or to suffer the consequences of termination.
Our determination of these issues effectively answers Acadian's allegation that the trial court erred in denying its motion for JNOV, offered on the same basis.

JURY CHARGES AND VERDICT FORM
Adequate jury instructions must fairly and reasonably denote the issues and provide correct principles of law for the jury to apply to those issues.[16] The trial court instructed the jury that "when one party to a contract fails or declines to perform under the contract, the other has a right to regard the contract as dissolved." Subsequently, the jurors indicated in their interrogatory answers that Mr. Fleming breached the contract, so as to justify Acadian's cancellation, yet, they awarded him damages for Acadian's breach of the contract. Thus, the answers were inconsistent with each other and with the jury charge that the court gave them. The trial court responded to these inconsistencies by explaining to the jury that if Mr. Fleming's breach justified cancellation, no damages were due, but if his breach did not justify cancellation, they *630 could award damages. We find that the trial court's actions were appropriate.
First, we find no procedural errors with providing this clarification. When answers to interrogatories are inconsistent with each other or with the general verdict, the court is not mandated to order a mistrial but has discretion to return the jury for further consideration of its answers.[17] After the jury has retired, the court may recall them to correct or withdraw an erroneous instruction, to clarify an ambiguous instruction, to inform them on a point of law, which should have been covered in the original instructions, or to give such further instructions as may be appropriate.[18] So, even after the jury returns its verdict, the court can, under the above circumstances, order it to continue deliberations.[19] "The jury verdict is rendered only after it is returned to the court and accepted by the court."[20] (Emphasis added.)
In the instant case, the court notified the parties of its supplemental instruction before re-instructing the jury. We agree with it that it was not required to allow the parties to reargue this instruction to the jury. Both parties had an opportunity to, but did not, object to the original instructions. Where a party fails to object to jury instructions before the jury retires to consider them, he or she waives any defects.[21]
Nor do we see any errors in the substance of the clarification. "The trial judge is required to instruct the jury as to the law that is pertinent to the case and to do so in terms that the jury can easily comprehend and apply to the evidence before it."[22] (Emphasis added.) The adequacy of the jury instructions must be assessed in light of the instructions as a whole.[23] We must exercise great restraint before overturning a jury verdict because the instructions were so erroneous as to be prejudicial.[24] We may not ignore the manifest error standard of review unless the jury interrogatories are so inadequate or incorrect as to prevent the jury from basing its verdict on the law and the facts.[25]
We do not find any case that Acadian cites to be persuasive. In fact, one of its cases, House v. Thompson,[26] lends support to the trial court's action in this case. In House, the jury answered one of the interrogatories in such a way that precluded it from proceeding to answer the remaining interrogatories or to award damages. However, the jury continued answering and did award damages, exactly the same pattern that the jury followed in this case. The trial court, in House, responded by clarifying to the jury what their answer to the interrogatory, in question, meant and by pointing out that the answer made a response to the subsequent interrogatories unnecessary. The jury informed the court that it had misunderstood the question, *631 after which, the court sent the jurors back for further deliberations. They returned, having changed their answer to the interrogatory in question. On a review of these actions, the First Circuit found that the court had not abused its discretion in that instance.[27]
Likewise, we cannot find that, by taking similar action in the case, sub judice, the trial court abused its discretion, nor can we second guess the jury, which acknowledged, once they understood the instruction, that their "apparent" inconsistency was because they had made a clerical error. Thus, we can, neither, overturn the jury's verdict based on the procedural aspect, nor on the substance of the jury charges.
Lastly, we turn to Acadian's request that we examine each juror's vote on each interrogatory, as well as on the general verdict, and upon finding that there were any inconsistencies in a juror's answers, discount that juror's vote in the general verdict. We must decline. The cases, which Acadian cites to support its position, are irrelevant. In those cases, either, it was clear that the jury had failed to agree, by a majority on every interrogatory,[28] or alleged jury confusion, evidenced by polling the jurors, was only one of many factors, such as the trial court's obvious failure to comply with several aspects of the Code of Civil Procedure.[29] We agree with the trial court, below, that once the number of requisite jurors agree on an issue, they are free to vote on the next issue however they please and cannot be disqualified from voting on one issue, simply, because they voted a certain way on a previous issue. Any other construction would make it impossible for a jury to reach a verdict in many cases.
Accordingly, we cannot conclude that the jury charges or the post-trial jury polling provides evidence that the jury was confused or misled to such an extent that they were prevented from doing justice.[30] Thus, the trial court did not abuse its discretion in denying Acadian's post-judgment motion for a new trial.

CONCLUSION
The jury found that Acadian breached its contract with Mr. Fleming and awarded damages of $145,000.00. Finding no error with the trial court's actions, we affirm the award and cast the costs for this appeal against Defendant/Appellant, Acadian.
AFFIRMED.
NOTES
[1] La.Civ.Code art.2045.
[2] Hebert v. Ins. Ctr. Inc., 97-298 (La.App. 3 Cir. 1/7/98); 706 So.2d 1007, writ denied, 98-353 (La.3/27/98); 716 So.2d 888.
[3] La.Civ.Code art.2046.
[4] Hebert, 706 So.2d 1007.
[5] Mallery v. Int'l Harvester Co., 96-321 (La. App. 3 Cir. 11/6/96); 690 So.2d 765, writ denied, 97-1323 (La.9/5/97); 700 So.2d 512.
[6] Hollenbach v. Holden, 98-970 (La.App. 3 Cir. 2/3/99); 728 So.2d 544.
[7] King v. Stroke, 95-656 (La.App. 3 Cir. 5/8/96); 673 So.2d 1329.
[8] Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
[9] Id.
[10] Id.
[11] La.Civ.Code art.2056.
[12] La.Civ.Code art.2054.
[13] Bellard v. Castille, 99-1161 (La.App. 3 Cir. 12/8/99); 759 So.2d 789, writs denied, 00-69, 00-71 (La.2/25/00), 755 So.2d 886, 887.
[14] Hickman v. South Pac. Trans. Co., 262 La. 102, 262 So.2d 385 (1972).
[15] 113 La. 215, 36 So. 943 (La.1903).
[16] Evans v. Tudor Constr., 95-1029 (La.App. 3 Cir. 1/31/96); 670 So.2d 447.
[17] La.Code Civ.P. art. 1813.
[18] La.Code Civ.P. art. 1796.
[19] Willis v. La. Power & Light Co., 524 So.2d 42 (La.App. 2 Cir.), writ denied, 525 So.2d 1059 (La.1988).
[20] Id., 524 So.2d at 45.
[21] Ainsworth v. Bituminous Cas. Corp., 379 So.2d 1187 (La.App. 3 Cir.), writ denied, 381 So.2d 1233 (La.1980).
[22] Evans, 670 So.2d at 452.
[23] Id.
[24] Id.
[25] Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991).
[26] 452 So.2d 1195 (La.App. 1 Cir.), writ denied, 457 So.2d 15 (La.1984).
[27] Id.
[28] Brown v. Schwegmann, 535 So.2d 1307 (La.App. 5 Cir.1988), writ denied, 538 So.2d 595 (La.1989).
[29] Weber v. Caterpillar Mach. Corp., 542 So.2d 544 (La.App. 5 Cir.), writ denied, 548 So.2d 332 (La.1989).
[30] Drilled Crossings, Inc. v. Texaco, Inc., 94-1435 (La.App. 3 Cir. 9/20/95); 663 So.2d 183, writ denied, 95-2553 (La.12/15/95); 664 So.2d 443.