(92 South. 322)

No. 24039.

## PEYTAVIN v. JOHN B. CAMORS, Inc., et al.

(April 3, 1922. Rehearing Denied by the Whole Court June 10, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Corporations**  ⬤⤳29(1)**—One whose agent participated in organization could not attack incorporation and withdraw her interest.**

One whose husband, with special authority from her, participated in the organization of a corporation and the transfer to it of property of the estates of her deceased parents and who accepted stock for her interest and withdrew the surplus above the amount of her subscription, could not thereafter attack the incorporation and withdraw her interest from the corporation.

2. **Corporations**  ⬤⤳448(1)**—Agreement between organizers held binding only on them and not on corporation.**

An agreement between heirs organizing a corporation that the husband of one of them should be given a position of equal dignity and salary with that of another's husband, related to a matter about which they had no power to bind the corporation, and any cause of action for its breach was against the individuals and not the corporation.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by Mrs. Clemence Camors Peytavin against John B. Camors, Inc., and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Charles Louque, of New Orleans, for appellant.

Charles J. Theard and Delvaille H. Theard, both of New Orleans, for appellees.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. Plaintiff demands that she be recognized as the owner in indivision with her brothers and sisters of all the real and personal property formerly belonging to their deceased father and mother, Mr. and Mrs. John B. Camors. She further alleges that she was induced to sign the charter of the defendant corporation, upon condition that her husband, John L. Peytavin, was to have a position of employment with said company of equal dignity and salary with that of Chas. S. McFarland, husband of one of her sisters, but that said condition was never fulfilled, and she is entitled to have her subscription to the capital stock annulled.

Plaintiff prays for an accounting and for a partition.

Defendants denied that plaintiff owned any interest in the property and assets formerly belonging to the two successions, and averred that same had been transferred to the defendant corporation, and that plaintiff, by acquiescence therein and having received the proceeds thereof, was estopped to attack her subscription to the stock of the corporation.

There was judgment for defendant, rejecting plaintiff's demands and she has appealed.

The main facts of the case are so well stated by the lower court, we adopt and quote from its opinion as follows:

"Fraud having been alleged by plaintiff, all the evidence pertaining to this case was heard, and that evidence proves the following substantial facts:

"The late J. B. Camors was a merchant in New Orleans. He married Marie Anna Campbell. The issue of this marriage was nine children, one of whom is Mrs. Peytavin, plaintiff herein. He was successful in his business, earned, and at his death left a large estate. He left the usufruct to his surviving wife in community, and the naked ownership of his property to his children in equal proportions. His widow and children transferred all the stock to the eldest son, Victor Camors, as trustee. The business was continued by the widow, Mrs. J. B. Camors, who bought out the share of Paul V. Camors, one of the children, in the commercial firm of J. B. Camors & Co.

"Mrs. Camors then died, leaving, as above stated, nine children. These children thus became the owners in equal proportions of all the property which constituted the estate of J. B. Camors and widow, and the commercial firm of J. B. Camors & Co. In their wills J. B. Camors and his wife gave a special legacy, $5,000 in each estate, to their four daughters. At the death of Mrs. Camors her estate and that of her husband consisted of real estate, stocks and bonds, and the flour and grocery business of J. B. Camors & Co.

"These estates remained in indivision for nearly three years. During that time Mrs. Peytavin acted in harmony with her brothers and sisters, was well informed of what was done, and joined in the administration of the estate and the conduct of the commercial business.

"One of the brothers, Henry Camors, then died, and his share in the estate and firm was purchased from his children by the remaining heirs of Mr. and Mrs. Camors, including Mrs. Peytavin. The money used to pay for this purchase was money of, and was taken out of, the partnership which held all the property, real and personal. The share of Paul V. Camors in his mother's estate was subsequently purchased by Victor Camors. Mrs. Peytavin and some of the other heirs objected to the sole acquisition by Victor Camors of Paul V. Camors' interest, and this share was subsequently transferred to all the remaining heirs, instead of to one, this share having been paid out of the common fund belonging to the heirs and out of the moneys and assets held in indivision. In like manner the share of Frederic Camors was purchased for the benefit of all the remaining heirs; it having been paid for out of the common funds in indivision.

"After these transfers and the death of Henry Camors, the entire property which had belonged to the commercial firm and the estate or Mr. and Mrs. Camors then belonged in indivision in equal proportions to the six children and heirs, namely Victor Camors, George A. Camors, Mrs. John L. Peytavin, Mrs. Charles S. McFarland, Mrs. Marcel P. Monrose, and Mrs. Sidney J. White.

"These six remaining heirs, all being of full age, determined to form a corporation. For that purpose they had several conferences on the subject in the office of Mr. Charles J. Theard, who had been for nearly 40 years the attorney for both Mr. and Mrs. Camors.

"Mrs. Peytavin, on account of being in bad health, did not attend these conferences, but they were attended by her husband, John L. Peytavin, who was fully authorized to represent her, and did act for and did represent her, with full knowledge and consent. As a result of these conferences, it was decided to form a corporation to continue the business conducted by the estate. The capital stock of this corporation was fixed at $200,000, paid up, with a surplus of $250,000, the parties not wishing to have a larger capitalization. The properties, stocks, and bonds held by the heirs were in excess of $450,000. The daughters also were entitled to the special legacies made to them by their parents of $5,000 each in each succession."

There were credited, therefore, to the estate of the mother, Mrs. John B. Camors, the

capital invested in the commercial firm of John B. Camors & Co., and other items as follows:

| | |
|---|---|
| Capital of J. B. Camors & Co.............. | $330,200 30 |
| Dividends, rents, revenues, notes, etc..... | 49,047 17 |
| Proceeds of insurance of life of husband | 16,096 41 |
| United Fruit Company stock............... | 101,300 00 |
| Nipe. Bay stock............................ | 25,000 00 |
| Republic of Nicaragua bonds.............. | 13,000 00 |
| Property 2417-23 Dauphine street.......... | 8,000 00 |
| Property in Jeanerette..................... | 5,000 00 |
| Property on Prytania street............... | 8,000 00 |
| | $555,643 88 |
| From this there were deducted certain items charged to her estate, aggregating | 109,014 00 |
| Leaving net value of estate............... | $446,629 88 |

One-sixth of this amount was passed to the credit of each of the six heirs, to which was added the share of each in their father's estate and the net earnings of all property of every kind from the date of the death of Mrs. J. B. Camors to the time of the formation of the corporation; and in the cases of the four sisters, including plaintiff, there was also added to each the two legacies of $5,000 apiece, with interest as extra portions under the wills of both parents.

In the case of plaintiff, this made a total credit in her favor of $153,813.81, against which was debited sums due by her to the estate of $79,989.61, consisting mainly of withdrawals in cash, and she was also charged with $75,000, being one-sixth of the value of the assets transferred to the corporation as its capital and surplus of $450,-000, for which she was given one-sixth of the capital stock $200,000 or 333⅓ shares, valued at $33,333.33⅓.

There were embraced in the list and appraisement of property attached to and conveyed by the charter of the corporation, only the following: Personal property (merchandise stock in trade, etc.) of the commercial firm of John B. Camors & Co., and three pieces of real property, to wit, No. 513 Tchoupitoulas street, Nos. 2417 to 2423 Dauphine St., and the property in Jeanerette, La., and also all of the personal property (except household furniture, silverware, jewelry, etc.) belonging to both successions, including stocks, bonds, etc., which were transferred to it by Victor Camors, in whose name they stood as trustee; and each and every one of the six heirs (including plaintiff) was given credit for an equal portion thereof, which amounted to $74,438.33 apiece, or a total of $446,629.88. This, added to the capital stock which the corporation issued, caused it to pay to the heirs a total of $646,629.88, and, considering that a surplus of $250,000 had been provided, the stock was at that time worth $225 per share, all of which gave the entire property acquired from both the firm and the heirs an agreed value of $896,629.88.

However, there were three pieces of real property, which belonged to the estates of Mr. and Mrs. J. B. Camors, which fell to their children and which appear to now belong to the plaintiff and her brothers and sisters, defendants in this suit, to wit:

(1) A certain lot of ground and improvements in square No. 35 now 1181, bounded by Miro, Tonti, Havana and London Ave.

(2) Four certain lots of ground in square No. 43, now 1335, bounded by London avenue, Magistrate, now Dorgenois, Virtue, and Rocheblave and New Orleans streets; designated by the Nos. 7, 8, 9, and 10; acquired by J. B. Camors January 18, 1888, Reg. C. O. Book 128, fo. 105.

(3) A certain lot of ground in square 1525, bounded by Grand route, St. John, the prolongation of Savage street, Lepage street, Esplanade avenue, and the prolongation of Encampment street, acquired by J. B. Camors March 18, 1902. Reg. C. O. Book 188, fo. 219.

We are unable to find in the record anything to show that the heirs have divested themselves of these three pieces of property, and the family tomb is still owned in indivision by all of the heirs.

The record also shows that there has not been a division of the silverware.

[1] With respect to the dispositions that were made of the real and personal property

to the corporation, and the stock and credits which were given therefor, the record shows that plaintiff, though not personally present and participating, was represented by her husband, specially authorized by her, and that he was entirely familiar with and approved that action. Then with the knowledge so obtained, she accepted this stock, drew and spent the money credited to her account as the surplus above the amount of her subscription to the corporation, and when this had been done it was too late to attack the incorporation and to endeavor to withdraw her interest therefrom, as she is now seeking to do. Mechem on Agency, vol. 2, p. 1384; 16 Cyc. 787; Smith v. Scott, 3 Rob. 258; Weld v. Peters, 1 La. Ann. 432; Lee v. Ferguson, 5 La. Ann. 532; May v. New Orleans & C. Ry. Co., 44 La. Ann. 444, 10 South. 769.

[2] As to the alleged promise of her co-heirs that her husband was to be given a position of equal dignity and salary with that of McFarland, this was a matter about which they had no power to bind the corporation as individuals before it was created. Ehrich on Promoters, p. 74; Bradshaw v. Knoll, 132 La. 830, 61 South. 839. See, also, Cushion Heel Shoe Co. v. Hartt, 181 Ind. 167, 103 N. E. 1063, 50 L. R. A. (N. S.) 980. If she has a cause of action on that score, it is against the individuals who made the promise and not the corporation.

For the reasons assigned, the judgment appealed from is amended so as to recognize plaintiff as the owner of an undivided one-sixth interest in the three pieces of real property above described, as still belonging in indivision to her and the other five heirs, parties to this suit, and it is ordered that the same be partitioned by licitation. It is further decreed that plaintiff be recognized as the owner of a one-tenth interest in the family tomb, and that her right to sue George Camors and the other heirs for a partition of the silverware be reserved. The right is also reserved to prosecute whatever action she may have against any of the defendants, other than the corporation, for the alleged breach of agreement as to the employment of her husband.

As thus amended, the judgment of the lower court is affirmed, costs of appeal to be borne by the appellees, other than the corporation, all other costs to be paid out of the proceeds of the property herein ordered to be partitioned.

## On Application for Rehearing.

### By the WHOLE COURT.

PER CURIAM. It appearing not to have been made as clear as might have been in our former opinion that all the stocks and other securities which were placed in the name of Victor Camors, under an irrevocable power of attorney, by all the heirs of Mr. and Mrs. J. B. Camors, deceased, were held to have been transferred to and become the property of the corporation, it is declared to have been the purpose and intention of the said opinion and decree to so hold, and that condition is accordingly so recognized and decreed; and the applications for rehearing are refused.