FOLSE v. LOREAUVILLE SUGAR FACTORY, Inc., et al.

BUILDERS' SUPPLY CO., Inc., v. SAME.

No. 1358.

Court of Appeal of Louisiana. First Circuit. Oct. 3, 1934.

See, also, Builders' Supply Co. v. Loreauville Sugar Factory, Inc., 156 So. 672.

Burke & Smith, of New Iberia, for appellants.

Voorhies & Labbe, of Lafayette, for appellee.

LE BLANC, Judge.

These two cases were consolidated in the lower court for the purpose of trial and submission. A separate judgment was rendered in each in favor of the plaintiff, and these appeals were taken by the defendants who were cast in each case.

In both cases, the issue involves the status of certain improvements that were placed in a sugar factory that was at the time being operated by the Loreauville Sugar Factory, Inc., as a successful execution of these judgments, if they are affirmed, will depend largely on whether such improvements constitute movable property and as such still belong to that corporation. As a further issue in the Builders' Supply Company, Inc., Case, the solidary liability of a certain group of individuals named as the promoters and organizers of the Loreauville Sugar Factory, Inc., is involved.

Folse is the holder and owner of a promissory note of the Loreauville Sugar Factory, Inc., in the sum of $355.85 which is past due, and the liability of the corporation, it would seem, could not seriously be disputed. The vital question in his case, as is also presented in the case of Builders' Supply Company, Inc., is whether or not a sale made by J. A. Miller, who owned the property at the time the improvements were placed thereon, to J.

O. Bonin, and from Bonin to Vida Sugars, Inc., carried with it title to these improvements. For the purpose of having these sales set aside in so far as they attempted to convey title to the improvements, Vida Sugars, Inc., is made a party defendant, and J. A. Miller, who is an absentee, was cited through a curator ad hoc.

It may be appropriate at this time to state that the improvements in question consisted of one set of Birmingham revolving cane knives; one 120 horse power Diessel Engine; two Bagasse burners (Cupolas); one new feeder table; one new steel boom on the little derrick; three new liming (juice) tanks; three centrifugal pumps, 3", 6", 1½"; one large brick pump pit.

The contention of the plaintiffs is that the ownership of this property is governed by the provisions of Civil Code, art. 508, which prescribes the effect of the placing of improvements by a third person on the property of another and regulates its status. It is urged that, under the very terms of the article, such improvements remain the property of the one who placed them thereon until the owner of the land elects to keep them and pays for them, or else requires their demolition, none of which options were exercised by Miller, the owner, in this case, and that consequently the improvements remained and are the property of the Loreauville Sugar Factory, Inc. The defense on this issue is that the improvements have become immovables, not by destination, but in fact, that by a process of fusion they have become a permanent part of the sugar factory and cannot be considered separate and apart from it, and that, when Miller sold the factory, as a whole or unit, to Bonin, these improvements, being component parts thereof, were transferred with it.

The claim of Builders' Supply Company Inc., is for a balance of $662.34 due for goods and merchandise consisting principally of brick and clay, sold and delivered to "Loreauville Sugar Factory, H. N. Pharr, Trustee," in August and September, 1929. The theory on which this plaintiff seeks to hold the Loreauville Sugar Factory, Inc., liable, is that the group of individuals which formed the partnership operating under the name of Loreauville Sugar Factory, with H. N. Pharr acting as trustee, were at the time of the purchase of these goods promoting the organization of the corporation, that they subsequently became the incorporators and charter members thereof, and that subsequent to its incorporation the Loreauville Sugar Factory, Inc., be-

came the beneficiary of the purchase made of plaintiff and impliedly and expressly ratified the contract under which the purchases were made.

The record discloses that there formerly existed a corporation which operated the sugar factory with which we are concerned and which is also referred to as the Vida Factory. Among the original incorporators were four of the same parties who, with others, formed the group which later formed the partnership known as Loreauville Sugar Factory. During the existence of this first corporation, there was a mortgage of $30,000 bearing on the sugar factory, the site and appurtenances. A foreclosure was instituted when the mortgage note was not paid after maturity in 1926, and at the foreclosure sale the property was adjudicated to J. A. Miller for the sum of $40,000. Miller himself was a man without apparent means, and he obtained a loan from one F. E. Sweetser, also an absentee, the full amount being $49,250, represented by three notes secured by mortgage on the factory and factory site.

It was after the sale to Miller that the factory was operated under the style "Loreauville Sugar Factory, H. N. Pharr, Trustee," and the contention of the defendants is that, in his transactions relating thereto, Pharr was acting not as trustee for them, but for Miller, who it seems was an intimate friend of some of the Pharr family. This point is important, because it was during this period of operation that certain substantial improvements made necessary because of the new varieties of sugar cane introduced in Louisiana which were harder to crush and grind, were placed in the factory. It was during this period also that the bills herein sued on were incurred.

■ We find but little difficulty in arriving at the same conclusion as did the district judge, that the operations at this time were for and on behalf of the group of individuals made defendants in the Builders' Supply Company, Inc., Case, and that it was for them that Pharr was acting as trustee. This is borne out by the testimony of one of these gentlemen, Mr. John Schwing, who frankly states that the operations were primarily to pay off the obligations and then "ultimately get title to the property." Mr. Bonin's active participation in the management as well as his interest and the part he played later in acquiring the Sweetzer notes gives added weight to the finding of the trial judge on this point, and we thoroughly agree with him that, aside from being the record owner of the property, Miller knew very little, if anything, about it and what was going on.

In the month of October, 1929, Bonin and his associates organized the Loreauville Sugar Factory, Inc., which is shown to have been strictly an operating corporation, as the total amount of stock that was issued was $3,000, representing their equity in the improvements that had been placed in the factory during the summer of that year. Following the organization of the corporation, added improvements were placed in the factory by the corporation itself. All of these acts tend to further evidence and strengthen the fact that Miller's sole and only interest was as owner of the property, and that he had no connection whatever with the improvements placed thereon and with the operation of the factory. That being so, it is clear that the defendants' only hope of placing title to any of these improvements in Miller lies in their contention that they have become so incorporated into and merged with the realty as to have become immovables by nature.

■ To support their contention, counsel for the defendants seem to rely principally on the case of Monroe Automobile & Supply Co. v. Cole, 6 La. App. 337. The contest in that case was between the seller of a large gasoline tank and two gas stations used in a gasoline station, and a mortgage creditor, whose mortgage, granted prior to the placing of these chattels on the property, covered the lot of ground on which a garage and filling station were situated, together with all the improvements and appurtenances thereunto belonging. The court, in its opinion, very painstakingly described the construction of that part of the station. The tank was shown to be buried in the ground some two feet below the surface, and, in order to be held in position, was partly imbedded in concrete. The entire surface covering the tank was then covered over with reinforced concrete seven inches thick and served as a driveway for automobiles to reach the gas stations. These, it appears, were set in concrete in the driveway and were connected by pipes with air pumps which were buried along with the gasoline tank under the concrete surface. It was conceded by counsel representing the vendor that these chattels had become immovables by destination, but it was strenuously contended that their client's privilege had not been lost because of that change in the status of the property. The court, however, found that the real question presented was not whether the movables had become immovable by destination, "but whether they had become merged into the immovable and had be-

come so far a part of it as to lose entirely the character of movables," and it came to the conclusion that, because of the manner of construction, and particularly for the fact that their removal would seriously damage the realty, it was as though they were intended to be attached to the soil forever, and they were therefore immovables by nature, on which the vendor was without right to have them removed and sold in order to enforce its claim. The facts in the present case, with regard to the improvements listed in the petition of the plaintiffs, are not at all the same, as it is shown that all of them, with the exception of the brick pit, could be easily removed by the simple process of removing a few nuts from the bolts which are used to attach them to the foundations on which they rest. It may well be that the brick pit would come under the class of property that has become immovable by nature as was the gasoline tank in the case just referred to, but certainly none of the other improvements, as not one of them has lost its separate identity nor would any one of them lose that identity by removal in the manner indicated. Besides, their removal could be affected at a nominal cost and would result in no injury whatever to the factory. In this connection, it may be significant to observe that in the case of In re Receivership of Augusta Sugar Co., Ltd., 134 La. 971, 64 So. 870, a vacuum pan used in a sugar refinery was subjected to a vendor's lien and privilege although its removal necessitated the tearing down of one of the corrugated iron walls of the structure which inclosed it. This action was based on the testimony which showed that the removal of the tank could be accomplished and the premises restored "at a comparatively trifling cost" and that the sugar house would suffer no injury thereby.

■ Another important feature, however, which differentiates this case from that of Monroe Automobile & Supply Co. v. Cole, supra, lies in the fact that the improvements in the latter case were placed on the property by the owner, whereas here they were placed by third persons on the property of another. Therefore it cannot even be contended (which defendants, however, do not) that the improvements have become immovables by destination, because under article 468, R. C. C., things become immobilized by destination only when placed on a tract of land for its service and improvement, by the owner himself, or when he (the owner) has attached them permanently to the tenement or to the building.

■ Under the facts as presented we are forced to the conclusion, as reached by the learned district judge, that the status of these improvements as property is governed by the provisions of article 508, R. C. C. That article provides that "when plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same." The article prescribes the duties and obligations of the owner if he chooses to exercise his rights thereunder, and it necessarily follows that, as long as he does nothing with regard thereto, the constructions or works remain the property of the third persons who erected or made them. In this case, Miller, the owner of the soil, did absolutely nothing to exercise the options granted to him under the article of the Code, and he therefore never became the owner of the improvements that had been placed thereon by the Loreauville Sugar Factory, Inc., and by its promoters and organizers. He was therefore without right to sell them, and consequently transferred no title to them when he sold his property to Bonin.

■ Bonin, not having acquired title to the improvements, could not, of course, transmit any by his sale to the Vida Sugars, Inc., which the lower court held, under the evidence, had been organized by him and his associates, for the purpose of taking over the property. The lower court also held that as, at the time of these various transactions, the Loreauville Sugar Factory, Inc., was hopelessly insolvent, and this to the knowledge of the incorporators of the Vida Sugars, Inc., the transfer to the latter constituted an act of fraud committed for the purpose of shielding the property of the Loreauville Sugar Factory, Inc., from the pursuit of its creditors, and it accordingly set the transactions aside in so far as they affected these improvements and recognized title thereto in the Loreauville Sugar Factory, Inc. We can find no error in the finding of the court, and, in so far as the case of the plaintiff Folse is concerned, the judgment will be affirmed.

■ As before stated, the only other question the case of Builders' Supply Company, Inc., presents it that of the liability in solido of John O. Bonin, John Schwing, Cyrus De Blanc, and Pharr brothers (J. A. Pharr, Henry Pharr, E. A. Pharr, and J. A. Pharr, Jr.), the promoters and organizers of the corporation known as Loreauville Sugar Factory, Inc. On this point, the learned trial judge, after carefully reviewing the testimo-

ny, in far greater detail than we have attempted in this opinion, and applying the law, as he viewed it with regard to the liability of promoters of a corporation, held these defendants liable. His reasons, handed down in a written opinion, we find to be sound and logical, and we adopt them as our own. They are as follows:

"I must conclude that these individual defendants are liable for the debt herein. sued on. The fact that this debt was contracted for in the name of the corporation through a trustee, which at that time was not organized, but purely projected, a fact unknown to plaintiff, cannot defeat their individual liability. They must be held bound for their plans of organizing a corporation, which they expected would enjoy the benefits thereof, and in turn discharge the obligation created by them. There is no evidence of a novation of the debt or any intention of that fact expressed.

"In Corpus Juris, p. 269, we find: 'Of course promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract; and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed, unless there is a novation or other agreement to such effect.' See 14 C. J. page 259–273; Wells v. J. A. Fay, etc., Co., 143 Ga. 732, 85 S. E. 873.

"There is no evidence that plaintiff agreed to hold liable the corporation. The order was given not in the name of the corporation, but Loreauville Sugar Factory, by Pharr, trustee. It then had no existence. As was stated in Marchand v. Loan & Pledge Ass'n, 26 La. Ann. 389: 'It is impossible to imagine how the defendant, a juridical person, incurred a debt before its existence.' Peytavin v. John B. Camors, Inc., 151 La. 747, 92 So. 322.

"The contention of defendant that the Loreauville Sugar Factory, Inc., was the purchaser of the goods from which this debt arises is not only defeated by the facts as I have previously stated, but we find this additional circumstance which is of greater force: Not only was the corporation merely contemplated at the time of the creation of this debt, but we find that the debt was created by Pharr in the name of the Loreauville Sugar Factory. The Loreauville Sugar Factory, Inc., in itself had no existence as a corporation. It was merely a name given to property which was being operated by these individual defendants. And it is further shown that this same factory had been operated by these same individuals during the previous year. These operations were merely the actions of individuals as partners and associates in the conduct of a commercial enterprise. This fact therefore dissipates any idea that the goods were purchased by and in the name of the Loreauville Sugar Factory, Inc., for an inspection of the order of the goods mailed to plaintiff shows that the same were being ordered not in the name of the corporation, but in the name of the factory, which was being commercially used by these individuals in the hope of profit.

"There is no evidence to show that plaintiff had any knowledge of the projection of the corporation by these individual defendants. Undoubtedly, not being placed on its guard, plaintiff rightfully assumed that it was dealing with a factory in the name of an individual authorized and representing persons engaged in commercial pursuits.

"There was therefore neither express or implied understanding that plaintiff would look to any other but the persons actively engaged in operating this factory as a joint commercial enterprise. Plaintiff was certainly not called upon to anticipate the assumption of this debt by the contemplated corporation. The record is barren of any proof to show that the plaintiff ever subsequently consented to the assumption of this debt by the corporation and the release of the promoters from their individual liability. In the absence of that understanding, it having been clearly shown that these goods were purchased and the debt created by these individual defendants as partners in a commercial venture, their named and duly authorized agent and associate, they must be held liable therefor. Their liability is that of in solido, the law treating them as partners in a commercial enterprise and bound as such."

The judgment in this case will also be affirmed. A separate decree will be entered in each suit.

For the reasons herein stated, it is ordered that the judgment appealed from in the case of E. P. Folse v. Loreauville Sugar Factory, Inc., be and the same is hereby affirmed, at the appellants' costs.