## DAVID v. SOUTHERN IMPORT WINE CO., Inc.*

### No. 16481.

Court of Appeal of Louisiana. Orleans.

Dec. 14, 1936.

Titche & Titche and Robt. E. Friedman, all of New Orleans, for appellant.

Deynoodt & de la Vergne and Bennett Meyers, all of New Orleans, for appellee.

JANVIER, Judge.

Joseph B. David, as assignee of Julius H. Wiener, an attorney and notary practicing in this city, claims of Southern Import Wine Company, Inc., $300 alleging that to be the amount due by said defendant to said Wiener for notarial and legal services rendered in connection with the incorporation of the said wine company. Defendant simultaneously pleaded the prescription of one year as established by

*Rehearing denied Jan. 11, 1937. Writ of certiorari refused March 1, 1937.

article 3534 of the Civil Code, exceptions of vagueness and no cause of action, and also denied categorically the allegations of plaintiff's petition and alleged a special defense to which we shall later advert and in which it contended that in no event could it be held liable for more than $25.

The plea of prescription was founded on the theory that the allegations of the petition could be interpreted as characterizing the entire service rendered by Wiener as notarial, charges for which service, if notarial, would have prescribed in one year, since C.C. art. 3534 provides, inter alia, that:

"The following actions are prescribed by one year:

"That of * * * notaries * * * for the fees and emoluments which are due to them in their official capacity."

The exception of vagueness was directed at the failure of plaintiff to allege what portion of the charge had been made for notarial and what portion for legal service. The exception of no cause of action was based on the fact that the petition alleged that the service had been rendered prior to incorporation, it being argued that service rendered prior to incorporation could not authorize a charge against the corporation itself.

The exception of vagueness having been sustained, plaintiff amended by supplemental petition, which contained the allegation that the amount claimed for notarial service was $25 and the charge for legal service $275. Defendant again filed a plea of prescription of one year and again denied categorically all of the allegations of the two petitions.

The court, a qua, without passing upon the plea of prescription, or the remaining exception of no cause of action, rendered judgment for plaintiff for $25. From this judgment plaintiff has appealed, contending that the amount should be increased to $300 as originally prayed for, and the defendant has answered the appeal maintaining that the suit should be dismissed in toto.

It is now conceded by counsel for plaintiff that as to that portion of the claim, to wit, $25, which represents the notarial charge, the plea of prescription is well founded. Thus the claim is reduced to $275 for legal services alleged to have been rendered in connection with the organization and incorporation of defendant company. Against this claim defendant presents four defenses:

First, that the services rendered in the preparation and execution of a corporate charter are notarial and not legal and that, therefore, no legal charge may be made therefor, and that, if the charge is notarial, the claim therefor is prescribed under the codal article already referred to.

Second, that nothing at all is due, for the reason that such legal service as may have been rendered was rendered prior to incorporation and, consequently, could not be charged against the corporation, but must be collected for, if at all, from the individuals who contracted for the service.

Third, that when the persons who subsequently incorporated the defendant company met to discuss preliminary plans for incorporation, they authorized Mr. Walter Weiss, who was to be president and who later became president, to employ Mr. Wiener, to pass the act of incorporation, and that when Mr. Weiss was authorized to employ Mr. Wiener he was instructed to agree upon a fee of not more than $25, the contention being that Mr. Wiener, in any event, is bound by the instruction given by the principals to Mr. Weiss, and, therefore, cannot claim more than the $25, for which Mr. Weiss was authorized to contract.

Fourth, that only very simple notarial service was required and that, therefore, the charge made is excessive.

We shall consider these defenses in the order in which we have above presented them.

■ We experience no difficulty in concluding that advice and service rendered by an attorney in the preparation of a notarial charter constitute legal services. It is true that the actual passing of the charter is done by a notary, and it is also no doubt true that often notaries, without legal advice, prepare and execute charters for corporations. Nevertheless, we deem it quite plain that decisions on questions involving what shall be put into a charter and what shall be left out require the exercise of legal judgment and that, therefore, charges made for advice on these questions are charges for legal and not for notarial service.

■ Second. On behalf of defendant counsel call to our attention certain cases which, at first glance, might be interpreted as authority for the view that, wherever

legal service leading up to the forming of a corporation is rendered, it may not be charged against the subsequently formed corporation, and that the only recourse of the attorney who renders such service is to demand payment from the individual persons who may have consulted him. But that rule is not applicable where the service is limited to that which immediately precedes, or is, in effect, contemporary with, actual incorporation, and where the actual incorporation is, in effect, ratified and approved later by the acceptance by the corporation of the benefits which have flowed to it from those services. A corporation brought into existence—given its life—by the service of an attorney, may not be heard to say that the service was unauthorized because rendered prior to incorporation. When the benefit of such service is received and accepted by the corporation, it cannot be heard to question the authority through which the service was employed. It may be that in such case the corporation may not be held to the express terms of a contract for such employment; in other words, it may not be held to the contract itself, but it may not repudiate the service entirely and yet reap the benefits therefrom. It may repudiate the contract price if a price has been agreed upon, but it may not refuse to pay for the service on the basis of the value of the benefits received; in other words, on a quantum meruit. This is indicated even in the authorities relied upon by defendant. In Bradshaw v. Knoll, 132 La. 829, 61 So. 839, 843, is found a case pointed to by defendant as authorizing the view that such pre-incorporation service cannot form the basis of a charge against the subsequently organized company. But the service for which recovery was sought in that case was purely promotional, had nothing to do with the actual incorporation of the company, and was not ratified subsequently by the company. Nor did the company receive any benefit therefrom. That this is true is evident, for the court said:

"It is not shown that the said company ratified or adopted said agreement by resolution or other corporate action, or has received any benefit from the alleged services of Bradshaw."

Counsel for defendant contend that ratification of the employment of such an attorney may be made only by resolution of the board of directors. But we note that in the language above quoted the court refers to the fact that ratification may result by resolution or *other corporate action* (italics ours) and we also note particularly that in that case the court said that it was not shown that the company "has received any benefit from the alleged services." Here the benefit received was the actual creation of the corporation itself.

Another case relied on by defendant is Peytavin v. John B. Camors, Inc., et al., 151 La. 747, 92 So. 322. But there the alleged pre-incorporation contract had nothing whatever to do with the incorporation of the company. Contemplated by it was the employment by the corporation, after its organization, of the husband of one of the parties to the contract. The court held that persons who make a contract prior to the incorporation of a company may not bind that company to do the things set forth in the contract.

The case principally relied on by defendant as maintaining the defense now under consideration is Marchand v. Loan & Pledge Association, 26 La.Ann. 389, and it is true that in that case the court made the statement that "a claim for money expended and time employed, before the incorporation of the Loan and Pledge Association, can not be regarded as a debt of the institution." But, even in that case, the services rendered were not so closely affiliated and allied with the actual creation of the corporation as were those with which we are concerned in the case at bar. The services in the Marchand Case were rendered prior to incorporation, and the plaintiff alleged that at the instance of the stockholders he had visited various cities in acquainting himself with proper formation and efficient management of similar institutions, and that he had consulted attorneys and had spent his own money in obtaining information to be used in operating the company, of which it was apparently contemplated that he was to have been the principal head. It was also alleged that he had expended money in connection with the passage of the charter which, at that time, was required by law to be enacted by the state Legislature. The court held that such service could not form the basis of a charge against the subsequently incorporated corporation. But we think that the fact which principally influenced the court to reach the conclusion which it did was that a part of the cash for which the plaintiff claimed

reimbursement had been expended "for the purpose of influencing legislation; that is, bribing the Legislature to pass the act incorporating the Loan and Pledge Association." The court said:

"For the recovery of money thus expended, this court can give no relief. The guilty suitor must be left where his immorality has placed him."

But, even if the ratio decidendi was not the fact that the money had been expended for the illegal purpose of bribery, the facts of the case distinguish it from those of the case before us, for there there was not the intimate connection between the service rendered and the subsequent birth of the corporation, which we find existed in the case at bar.

■ Our conclusion is that, where an attorney is employed to prepare articles of incorporation and the corporation comes into existence as a result of those services, the corporation is bound, as by a quasi contract, for the payment of those services on a fair basis.

Third. Defendant contends that in any event the amount of recovery must be limited to $25, for the reason that the incorporators, prior to incorporation, when they authorized Mr. Weiss to employ Mr. Wiener, instructed him to limit the fee to $25. It appears from the evidence of Mr. Wiener, and of Mr. Weiss that when they met nothing was said by the latter to the former about fixing the fee at $25. Mr. Weiss testifies that at no time did he discuss with Mr. Wiener the question of the amount of the fee, the understanding being that it was to be a reasonable one. It thus appears that the instructions given by the incorporators to Mr. Weiss were not communicated by him to Mr. Wiener. They were thus private, or secret, instructions given by the principal to the agent and not communicated to the party with whom the principal intended that the agent should deal.

■ Counsel for defendant contend that article 3010 of the Civil Code is applicable and that, therefore, the fee must in any event, be limited to the $25, because that article provides that:

"The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity."

There is no doubt of the soundness of this principle, and the many cases cited on behalf of defendant show that it has been many times applied in Louisiana, but the principle does not apply where the general power is granted to an agent to negotiate on a particular matter and he is given secret, or private, instructions with reference to certain details of the matter and these private or secret instructions are not communicated to the third party. In 2 Corpus Juris Secundum, verbum Agency, p. 1203, appears the following:

"The authority of the agent is to be tested and determined by the character bestowed upon the agent and not by the instructions given him by the principal, so far as innocent third persons are involved, so that acts or transactions may be within the sphere wherein an agent can impose liability on the principal, although outside of the agent's authority as qualified by private instructions.

"Their general unavailability against third persons often appears in connection with language referring to apparent authority; and so it has been said that one dealing with an agent, in good faith, and in reliance on the apparent authority with which the principal has clothed an agent, will not be affected by private or secret instructions or limitations on the agent's powers, whatever their effect as between principal and agent, and that the agent's apparent authority will not be narrowed by uncommunicated limitations imposed on his powers by the principal. Third persons may deal on the faith of such apparent authority without being bound by such limitations, it being sufficient to render the instructions or limitations nugatory that the agent's acts in the premises are reasonable and such as would ordinarily be done by a person having the authority apparently exercised by the agent, or, more briefly stated, that they come within the scope of his apparent authority."

That this view with reference to secret and uncommunicated instructions is followed in Louisiana is indicated in Interstate Electric Company v. Frank Adam Electric Company, 173 La. 103, at page 111, 136 So. 283, 286, in which the Supreme Court said:

"If defendant had a private agreement with Keller by which his authority was

limited, such agreement was not binding upon plaintiff, which knew nothing of it."

In Chaffe v. Barataria Canning Company, 113 La. 215, 36 So. 943, 949, is found the following:

"The defendant, having held the plaintiff out as its duly authorized agent, third parties were unaffected by any private limitations upon plaintiff's powers."

See, also, Johnson v. Manget Brothers Company, 168 La. 317, 122 So. 51.

Squarely in point is the case of Farrar v. Duncan, 29 La.Ann. 126. There an agent was authorized to operate certain plantations for an owner and to collect the revenues and do all things necessary. The agent had, in several instances, employed counsel to represent the owner where legal service was necessary. It became necessary to employ an attorney to take necessary proceedings to redeem the plantations, which had been sold for taxes. The agent employed Mr. E. H. Farrar for this purpose and made no agreement with him as to the amount of his fee, nor as to whether or not it would be paid by the agent or by the principal. When the service had been performed, Mr. Farrar sought recovery of his fee from the principal, who resisted on the ground that the agent and the principal had had an understanding—not communicated to Mr. Farrar—"that the agent was alone to be responsible for fees of counsel employed by him." The court held "that a general authority empowers the agent to bind his principal by all acts within the scope of his employment, and the consequence of this authority is, that its exercise by the agent is not affected or limited, as to a party dealing with him, by any private order or direction not known to such party." The court further said:

"The employment by the agent in this case of plaintiff binds his principal to the payment of a just and reasonable remuneration for his services."

We conclude, for the reasons given and under the authorities cited, that, where an agent is authorized to employ an attorney or a notary, the authority carries with it the right to contract for a reasonable fee and that the principal is liable for a reasonable fee, regardless of the fact that he has a private understanding with the agent that the fee shall be fixed at any particular amount, unless the said understanding is shown to have been communicated to the attorney or notary prior to the performance of the service.

The sole remaining question, then, is whether or not the amount charged, to wit, $275, is a reasonable fee for legal service rendered in giving advice in connection with the organization of a corporation capitalized at $50,000. The record shows that the fee is not excessive when compared with fees for similar service performed by other attorneys in this city. While it is shown that Mr. Wiener is not a member of the New Orleans Bar Association, the evidence establishes that that association has adopted a minimum fee schedule, and that, under that schedule, a charge of $300 would have been the minimum charge permitted to be made by members of the association. Such a schedule, while not binding, is admissible in evidence as indicating what is considered a fair charge by reputable members of the legal profession.

For the reasons given, it is ordered, adjudged, and decreed that the judgment appealed from be and it is amended by the increase of the amount thereof to $275, with legal interest from judicial demand, and it is further ordered that, as thus amended, the judgment be and it is affirmed at the cost of appellee.

Amended and affirmed.