830 So.2d 994 (2002)
Roberto MOLINA, Sr. and Vicki Lynn Zulli, Individually and in Her Capacity as the Natural Tutrix of the Minor Children, Robert Molina, III and Alli Molina
v.
CITY OF NEW ORLEANS.
Karen Grace Mann, et al.
v.
City of New Orleans.
Nos. 2001-CA-1411, 2001-CA-1412.
Court of Appeal of Louisiana, Fourth Circuit.
October 2, 2002.
Rehearing Denied December 12, 2002.
*996 Anthony J. Russo, Dean J. Favret, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Plaintiffs/Appellees.
Steven M. Spiegel, New Orleans, LA, for Plaintiff/Appellee (Jessica Parsons Liuzza).
Frank W. Lagarde, Jr., J. Price McNamara, Metairie, LA, for Plaintiffs/Appellees *997 (Karen Grace Mann and Edward Mann).
Mavis S. Early, City Attorney of Orleans Parish, George C. Wallace, Chief Deputy City Attorney of Orleans Parish, Edward Reynolds, Deputy City Attorney of Orleans Parish, John M. Holahan, Jr., Assistant City Attorney of Orleans Parish, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III).
Judge PATRICIA RIVET MURRAY.
Plaintiffs appeal the judgment of the trial court finding the defendant, the City of New Orleans ["the City"], partially at fault for the automobile accident that precipitated this lawsuit and awarding them damages against the City. The City also appeals the judgment. For the reasons that follow, we affirm.
FACTS
On October 31, 1998, at approximately 5:30 a.m., a vehicle driven by Robert Molina, Jr. was traveling eastbound on Almonaster Boulevard when it collided with New Orleans Fire Department ["NOFD"] Engine # 22, which was parked perpendicular across the road, completely blocking both eastbound lanes of travel. Mr. Molina was killed in the accident, as was Tiffany Mann, his eighteen-year-old passenger. The other passenger in the vehicle, eighteen-year-old Jessica Liuzza, was seriously injured.
At the time of the accident, Engine # 22 was being used by the NOFD in its ongoing attempt to extinguish a fire that had been burning for several days in the Almonaster dump adjacent to the road. On the day prior to the accident, the New Orleans Police Department ["NOPD"] had performed traffic control by diverting all motorists from eastbound Almonaster at Elaine Street, a point about four-fifths of a mile west of the fire scene, so that all traffic safely bypassed the area. However, later that afternoon the NOPD abandoned all traffic control efforts, apparently due to a shortage of manpower. Although NOFD personnel communicated that the situation was hazardous and requested that the police resume traffic control, it was never resumed, and no alternative measures were employed by NOPD. During the 11:00 p.m. to 3:00 a.m. fire watching shift, several hours prior to Mr. Molina's accident, another vehicle collided with Engine # 20, which was parked in essentially the same position that Engine # 22 was later placed for the next shift. Despite this fact, no further measures were taken by either the NOFD or the NOPD to warn or protect motorists. At the time of Mr. Molina's accident, Engine # 22 was visible by means of a light bar across its top front, two stationary red lights on its rear, and two small spotlights on each side of the truck. There were no spotlights shining directly toward oncoming traffic, and the only traffic control device being utilized was the placement of four cones approximately twenty feet from the fire engine.
The investigation following the accident showed that Mr. Molina was traveling at an excessive rate of speed (at least 96 m.p.h. in a 45 m.p.h. zone) and was driving while intoxicated (tests showed his blood alcohol level to be 0.12).
PROCEEDINGS BELOW
The plaintiffs, who include Jessica Liuzza, Edward and Karen Mann (the parents of Tiffany Mann), and Vicki Zulli (on behalf of her two minor children, Alli Molina and Roberto Molina III, whose father is Roberto Molina, Jr.), filed separate lawsuits against the City that were consolidated *998 for trial. After a four-day bench trial held October 30 through November 6, 2000, the trial court rendered judgment on January 24, 2001, finding Roberto Molina, Jr. to be 75% at fault and the City 25% at fault in causing the accident. The trial court found the amount of total damages to be as follows:
(1) To Jessica Liuzza: $150,000 in general damages, plus $10,877.46 in past medical expenses, $10,000 in future medical expenses, $10,000 in lost wages and $25,000 in loss of earning capacity;
(2) To Edward Mann: $350,000 in general damages for the wrongful death of his daughter;
(3) To Karen Mann: $350,000 for the wrongful death of her daughter plus $8,209 in funeral expenses;
(4) To Vicki Zulli: $350,000 on behalf of Alli Molina and $350,000 on behalf of Roberto Molina, III for the wrongful death of their father, plus $142,638.83 on behalf of Alli Molina and $142,638.83 on behalf of Roberto Molina, III for past and future loss of support. Based upon its allocation of fault, the trial court rendered judgment against the City for 25% of the plaintiffs' total damages, plus interest and costs.
On appeal, the City contends the trial court erred by failing to find the driver of the vehicle, Roberto Molina, to be solely at fault in causing the accident. Alternatively, the City argues that the trial court erred by considering evidence of other accidents which were not substantially similar, by failing to consider the City's defense of immunity, and finally, by awarding excessive damages. Appellees, each of whom filed an answer to the appeal, refute the City's arguments and additionally contend:
(1) That the fault allocated to the City should be increased to 50% (urged by Jessicca Liuzza), 65% (urged by the Manns) or 75% (urged by Ms. Zulli on behalf of the Molina children);
(2) That the damages awarded for wrongful death should be increased as follows: $500,000 to each of the Manns, and $700,000 to each of the Molina children.
DISCUSSION
I. ALLOCATION OF FAULT
The trier of fact's allocation of fault is a factual determination that is owed some deference by the appellate court, and therefore it should not be disturbed unless it is manifestly erroneous or clearly wrong. See Clement v. Frey, 95-1119, 95-1163, pp. 5-8 (La.1/16/96), 666 So.2d 607, 609-611. Moreover, once the appellate court finds a "clearly wrong" apportionment of fault, it should adjust the award only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Id. at pp. 7-8, 666 So.2d at 611. As this court has noted, the apportionment of fault is not an exact science or the search for one precise ratio, but rather is an acceptable range within which any allocation by the trier of fact cannot be "clearly wrong." Riley v. Reliance Ins. Co., 97-0445, p. 6 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 163.
In the instant case, the appellant argues that it was error for the trial court to assess any degree of fault to the City, considering the excessive speed and intoxication of the driver. Uncontroverted evidence at trial confirmed that Mr. Molina was traveling at least 96 m.p.h. in a 45 m.p.h. zone, and that his driving ability was impaired by a blood alcohol level of 0.12. The City contends that under these circumstances, it had no duty to prevent the accident, which was caused solely by driver negligence.
We disagree. The law is clear that municipalities have a duty to keep *999 roads safe for both prudent and imprudent, inattentive drivers and their passengers. See Molbert v. Toepfer, 550 So.2d 183, 186 (La.1989); Owens v. Concordia Electric Co-op, Inc., 95-1255, pp. 20-21 (La.App. 3 Cir. 6/25/97), 699 So.2d 434, 445. When the fault of a motorist and the fault of a governing body responsible for warning motorists of unreasonably dangerous road conditions combine to produce an accident, comparative fault is applicable. Gadman v. State Through Dept of Transp. & Dev., 493 So.2d 661, 666 (La.App. 2d Cir.1986), amended in part, 497 So.2d 1001 (La.1986).
It is unquestionable that the City had a duty to protect motorists in the instant case. Both the NOPD and the NOFD had actual notice of the dangerous situation created by the fire engine completely blocking both eastbound lanes of the highway, which situation had persisted for at least a whole day prior to this accident. Traffic control, which had been in place earlier in the day and had been completely diverting eastbound traffic from the scene, was abandoned by the NOPD about 3:00 p.m. on the afternoon prior to the accident. The evidence showed that NOFD Captain Rodney Waller radioed two requests to the NOPD before 6:00 p.m. that day asking that traffic control be resumed. Then, at approximately 2:15 a.m. the next day, another vehicle ran into Engine # 20, which accident was investigated by NOPD Officer Osceola Scanlan. Despite this fact, there was neither a request from NOFD personnel nor an independent realization on the part of NOPD personnel that traffic control should be resumed. Moreover, despite being made aware of the earlier accident, the NOFD personnel who took over the next shift parked Engine # 22 in the exact same position as Engine # 20 had been, and implemented no other measures to warn drivers of the hazard. Finally, there was evidence that the firemen involved, who were not engaged in active firefighting but in a "fire watch" mode, had other means available to them which they could have used to make the situation safer for motorists, but did not. For example, NOFD Captain Louis Robinson testified that he thought of using an NOFD Ford Bronco with a light apparatus on top, which was parked at the site, to divert traffic as the police had formerly done, but he never attempted to implement his idea.
Accident reconstruction expert John Rigol testified that the accident was caused by the excessive speed of the Molina vehicle and the fact that eastbound motorists were given inadequate warning of the presence of the fire engine. His testimony was supported by scientific analysis of the 306-feet long skid marks left by the Molina vehicle and the probable driver reaction time, which showed that Mr. Molina saw the fire engine from at least 517 feet away. Therefore, Mr. Rigol opined that had Mr. Molina been given more notice, he could have stopped before colliding with the fire truck. In addition, Mr. Rigol testified that had the position of the fire engine (which he found was parked at a 90 degree angle to the road) been rotated just 30 degrees, it would have been 450% more visible.
Considering the evidence, we cannot say that the trial court's decision to assess fault to both the City and Mr. Molina was clearly wrong. When law enforcement officers become aware of a dangerous traffic situation, they have the affirmative duty to ensure that the public is not subjected to unreasonable risks of harm. Edwards v. Daugherty, 97-1542, p. 22 (La.App. 3 Cir. 3/10/99), 729 So.2d 1112, 1126. Based on the facts adduced at trial, it was reasonable for the trial court to conclude that the accident was caused by the combined negligence of City employees and the driver of the vehicle. *1000 We therefore reject the City's argument.
Plaintiffs, conversely, argue that the trial court erred by failing to assess a higher degree of fault to the City. Considering the facts, however, we cannot say that the trial court's fault allocation is an abuse of discretion or is outside the range of what we consider to be reasonable in this case.
The plaintiffs argue strenuously that the trial court's fault allocation is "clearly wrong" because of the failure to assign fault separately to the NOPD and the NOFD. Without citing direct authority for this proposition, counsel for the Manns and Jessica Liuzza contend that the failure to apportion the City's fault between those two departments is manifestly erroneous because it violates the mandate of Louisiana Civil Code article 2323(A) that "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined...." (Emphasis added). Relying on the same article, counsel for the Molina children argues that the trial court should have assessed the fault of each individual fireman and police officer separately.
We decline to adopt plaintiffs' strictly literal interpretation of article 2323. Although we recognize that in the instant case the trial court could have delineated the fault of the NOPD and the NOFD separately, or even, the fault of each individual employee separately, we do not find that it was error for the court to combine their fault into one assessment against their mutual employer, the City, which is vicariously liable for all their actions. According to our general principles of statutory interpretation, when the language of a law is susceptible of different meanings, the law must be given the meaning that best conforms to its purpose. La. Civ.Code art. 10. The initial purpose of article 2323, which established a pure comparative fault system in Louisiana, was to ameliorate the harshness of the former contributory negligence doctrine by apportioning losses between plaintiff and defendant when both are negligent. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In the case of a non-negligent plaintiff, the purpose of the article is to allow those at fault to apportion and claim contribution among themselves, and to claim credit for what any nonparty found liable to plaintiff had paid. Nowell v. State Farm Mutual Auto. Ins. Co., 576 So.2d 77(La.App. 2d Cir.1991). Therefore, the objective of article 2323 is satisfied as long as the trier of fact has not completely failed to consider the responsibility of a person or entity allegedly at fault. The article is not compromised when, as here, the trier of fact has aggregated the fault of different persons and/or entities into a single fault assessment against their vicariously liable employer. We therefore reject plaintiffs' contention that the trial court committed manifest error by doing so in this case.
With regard to driver fault, experts for both the plaintiffs and the City agreed that had Mr. Molina been traveling 85 m.p.h. instead of 96 m.p.h. (which is still 40 m.p.h. above the posted speed limit) the accident would not have occurred. The two accident reconstruction experts who testified for the City opined that Mr. Molina's excessive speed and intoxication were the only cause of the accident. The parties stipulated that Mr. Molina's blood alcohol level was 0.12%, and there was uncontroverted expert testimony by Dr. Monroe Samuels that 100% of the population would exhibit impairment of normal faculties at the level of 0.1%. Given this evidence, we cannot say it was clearly wrong for the trial court to have apportioned 75% of the fault to Mr. Molina.
*1001 Accordingly, we decline to disturb the trial court's allocation of fault.
II. THE CITY'S IMMUNITY DEFENSE
The City contends that it was error for the trial court to refuse to consider its defense that it is immune from liability under La. R.S. 9:2798.1, which states, in pertinent part:
Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
The trial court expressly refused to allow the City to assert this defense on procedural grounds because it was not asserted timely. Immunity is an affirmative defense, which must be specifically pleaded in the defendant's answer. See La.Code Civ. Pro. art. 1005; White v. City of New Orleans, 2000-2683, pp. 2-3 (La.App. 4 Cir. 1/9/01), 806 So.2d 675, 677. The record reflects that Edward and Karen Mann filed and served a supplemental and amended petition on August 11, 2000, accompanied by a motion for leave. The trial court granted them leave to file the amended petition at the September pretrial conference, and signed the motion for leave on October 6th. On the afternoon of Friday, October 27th, with the trial scheduled to begin on Monday, October 30th, the City attempted to file an answer to the amended petition, which asserted for the first time the immunity defense. After hearing the objections of the plaintiffs on the morning of trial, the trial court refused to accept the City's answer, which was filed beyond the fifteen-day period generally allowed for an answer and beyond the ten-day period allowed for an answer to an amended petition. See La. Code Civ. Pro art. 1001. The City offers no facts to refute the plaintiffs' argument that its assertion of the immunity defense was time-barred; instead, it focuses on the merits of whether the defense is applicable in the instant situation.
Pretermitting a discussion of the merits, we find that the trial court was within its discretion to refuse to allow the assertion of this new defense one day before trial, as the defense clearly was not asserted timely.
III. EVIDENCE OF OTHER ACCIDENTS
The City suggests that the trial court erred by admitting, or alternatively by giving any weight to, evidence concerning the accident that occurred a few hours prior to the instant one when another eastbound driver collided with a fire engine at exactly the same location, as well as evidence presented by witnesses who testified they had experienced "near misses" while driving through the same area during the time the firefighting operation was in place. The City bases this argument on the assertion that such evidence is not relevant because the prior accident (and presumably the other witnesses' experiences) were not substantially similar to the accident which is the subject of this lawsuit; for instance, the City contends the 2:15 a.m. collision with the fire truck is not similar to the instant one because the police report indicated that the driver fell asleep (a fact which the driver denied when he testified at the instant trial).
We find that evidence of the earlier collision between an eastbound traveling motorist and a fire engine parked in the exact same location, irrespective of its cause, was relevant to the issue of notice to the City that a dangerous situation that presented a traffic hazard existed in that *1002 location. The perceptions of other drivers who testified to having nearly missed colliding with the same engine were also relevant to determining the nature and extent of the risk to motorists in that location and therefore whether the City employees had a duty to minimize that risk. This was a bench trial, and we find it was well within the trial court's discretion to determine that the probative value of this evidence outweighed any potential prejudice. See La.Code Evid. art. 403. We therefore reject the City's assignment of error.
IV. DAMAGES
Answering the City's appeal, Edward and Karen Mann argue that the general damages awarded them for the wrongful death of their daughter should be increased from $350,000 each to $500,000 each; similarly, Ms. Zulli contends that the general damages awarded the two Molina children for the wrongful death of their father should be increased from $350,000 each to $700,000 each. Conversely, the City contends that the amounts of general damages awarded to the Manns and to Jessica Liuzza should be reduced, and that the amount awarded the Molina children for loss of support is excessive because it is partially based on speculative evidence.
With regard to the general damage awards, none of the parties, each of whom has cited various allegedly similar cases with higher or lower awards, has met the requisite standard of demonstrating that the trier of fact has abused its "great, even vast" discretion in determining quantum. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993). Because reasonable persons frequently disagree about the measure of general damages in a specific case, an appellate court should rarely disturb the trial court's award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess in the particular circumstances that the appellate court should increase or decrease the award. Id. In the instant case, we do not find the general damage awards made by the trial court to be unreasonable or an abuse of that court's discretion; therefore, we decline to disturb those awards.
Finally, the City's argues that the amount awarded to the Molina children for loss of support ($142,638.83 each) is abusively high because the testimony regarding Roberto Molina's lost wages was completely speculative. We disagree. At the time of their father's death, Alli Molina was four years old and Roberto Molina, III was five years old. Expert economist Dr. Kenneth Boudreaux testified that the combined total loss of support, both past and future, to the Molina children was $285,277.00, nearly exactly the amount awarded by the trial court. Dr. Boudreaux's testimony was uncontradicted, and was based upon Mr. Molina's two most recent tax returns showing an average annual income of approximately $7300, plus the testimony of Ms. Zulli and Mr. Molina's father that Roberto had typically earned an additional $8,000 to $14,000 a year in unreported income by oystering, shrimping and boiling seafood. It is well settled that a plaintiff's uncorroborated testimony is sufficient to prove lost wages as long as the testimony is uncontradicted and reasonably establishes the claim. Richard v. Teague, 92-17 (La.App. 3d Cir.5/4/94), 636 So.2d 1160, 1174 (Citation omitted). We conclude that the trial court did not abuse its discretion by basing its loss of support award on the unrebutted testimony of plaintiffs and of Dr. Boudreaux.
*1003 CONCLUSION
Accordingly, for the reasons stated, the judgment of the trial court is affirmed
AFFIRMED.