# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

**06-898 consolidated with 06-899 and 06-900**

**KENNETH JOHNSON, ET AL.**

**VERSUS**

**STATE OF LOUISIANA,
THROUGH DOTD, ET AL.**


**KEITH BAHAM, ET AL.**

**VERSUS**

**H&S CONSTRUCTION CO., INC.,  ET AL.**


**NARCISSE THIBODEAUX, ET AL.**

**VERSUS**

**STATE OF LOUISIANA,
THROUGH DOTD, ET AL.**


**\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NOS. 99-0460, 99-0950, 99-1555
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

**J. DAVID PAINTER
JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter,
Judges.

**AFFIRMED AS AMENDED.**

**W. Alan Lilley
Goforth & Lilley
109 Stewart Street**

Lafayette, LA  70502
Counsel for Plaintiffs-Appellants:
        Keith Baham, Chad Baham, and Sherry Baham Cormier

William H. Goforth
Goforth & Lilley
109 Stewart Street
Lafayette, LA  70502
Counsel for Secondary Plaintiffs-Appellants:
        Kenneth Johnson and Chrystal Johnson,
        Individually and on behalf of the minor children,
        Holden Johnson, Seth Johnson, and Chasity Ozenne

Stacey A. Moak, Special Assistant Attorney General
Stacey Moak & Associates
P.O. Box 77651
Baton Rouge, LA  70879-7651
Counsel for Secondary Defendant-Appellant:
        State of Louisiana, Through DOTD

Douglas M. Chapoton
Stacey Moak & Associates
P.O. Box 77651
Baton Rouge, LA  70879-7651
Counsel for Secondary Defendant-Appellant:
        State of Louisiana, Through DOTD

Andrew W. Ralston, Special Assistant Attorney General
Stacey Moak & Associates
P.O. Box 77651
Baton Rouge, LA  70879-7651
Counsel for Secondary Defendant-Appellant:
        State of Louisiana, Through DOTD

Scott M. Hawkins
Chris P. Villemarette
Hawkins & Villemarette
107 Regency Square
Lafayette, LA  70508
Counsel for Defendants-Appellees:
        Narcisse Thibodeaux and Roma Thibodeaux

**PAINTER, Judge.**

Following a jury trial in three consolidated cases, the trial court entered judgment in favor of Plaintiffs. Plaintiffs in two of the cases appeal, seeking increases in the awards of damages. Defendant, State of Louisiana, Through DOTD, also appeals, seeking a reversal of the jury's finding that it was seventy percent at fault in causing the automobile accident at issue herein. For the following reasons, we amend the judgment to increase certain damage awards. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 1998, at approximately 2:16 p.m., an automobile accident occurred at the intersection of LA Highway 1096 (also known as Toby Mouton Road) and LA Highway 95 in Duson, Louisiana, just south of the Duson exit from Interstate 10. Sharon Baham was driving a 1991 Ford Ranger pickup truck east on LA Highway 1096. Her nephews, Seth and Holden Johnson, and her niece, Chasity Ozenne, were passengers in the truck. Seth and Holden were in the rear seats while Chasity was in the front passenger seat. On the date in question, a DOTD construction project was underway, and LA Highway 95 was closed north of the accident site with LA Highway 1096 being used to detour traffic around the construction site. Mrs. Baham did not stop at the stop sign at the intersection of LA Highway 1096 and LA Highway 95 and, instead, drove into the path of Narcisse Thibodeaux's 1996 Ford F-350 truck which was pulling a forty-foot-long flat-bed trailer and traveling south on LA Highway 95. Despite Mr. Thibodeaux leaving his lane of traffic in an attempt to avoid a collision, the two vehicles collided in the northbound lane of travel on LA Highway 95.

1

Mrs. Baham was fatally injured in the accident. Holden, who was rendered unconscious in the accident, suffered severe injuries to his head and face which have allegedly resulted in organic brain syndrome. Seth and Chasity suffered less severe injuries. Mr. Thibodeaux injured his low back in the accident.

Mrs. Baham's husband, Keith Baham, and her two major children, Chad Keith Baham and Sheri Baham Cormier (the Baham Plaintiffs), filed suit against DOTD, RCS Contractors, Inc., and RCS's insurer. Kenneth and Chrystal Johnson, individually and on behalf of Chasity, Seth, and Holden (the Johnson Plaintiffs), filed suit against DOTD, RCS, and its insurer. RCS in turn filed a third-party demand against WorkZone, Inc., who it had hired for the purpose of installing temporary construction signs near the accident site. Mr. Thibodeaux and his wife, Roma Thibodeaux (the Thibodeaux Plaintiffs), filed suit against DOTD, RCS, and its insurer, WorkZone and its insurer, and Lafayette Consolidated Government. All petitions alleged that the stop sign at the intersection in question was obscured from view by detour signs.

DOTD moved to consolidate all three suits, and said motion was granted. Lafayette Consolidated Government was dismissed on its unopposed motion for summary judgment. Prior to trial, RCS and WorkZone settled with all Plaintiffs and were dismissed, leaving DOTD as the sole Defendant at trial. Following a two-week trial, the jury rendered a verdict finding that the site of the accident had defective signage which created an unreasonable risk of harm and that DOTD had actual or constructive notice thereof and time to correct it. The jury found no negligence on the part of RCS, WorkZone, or Mr. Thibodeaux. The jury, however, did find that Mrs. Baham was negligent in the operation of her vehicle at the time of the accident.

2

The jury went on to apportion seventy percent of the fault to DOTD and thirty percent of the fault to Mrs. Baham. Damages were awarded as follows:

| | |
|---|---:|
| <u>To Kenneth Johnson</u> for the injuries to Holden Johnson, Seth Johnson, and Chasity Ozenne | $25,000.00 |
| <u>To Chrystal Johnson</u> for the injuries to Holden Johnson and Seth Johnson | $25,000.00 |
| <u>To Holden Johnson</u><br>Past, present, and future medical expenses | $700,000.00 |
| Past, present, and future pain and suffering | $50,000.00 |
| Past, present, and future mental anguish and emotional distress | $50,000.00 |
| Past, present, and future lost wages and earnings capacity | $0.00 |
| Scarring and disfigurement | $50,000.00 |
| Loss of enjoyment of life | $50,000.00 |
| TOTAL TO HOLDEN JOHNSON | $900,000.00 |
| <u>To Seth Johnson</u><br>Past medical expenses | $14,060.20 |
| Past, present, and future pain and suffering | $5,000.00 |
| Past, present, and future mental anguish and emotional distress | $5,000.00 |
| TOTAL TO SETH JOHNSON | $24,060.20 |
| <u>To Chasity Ozenne</u><br>Past medical expenses | $6,036.00 |
| Past, present, and future pain and suffering | $5,000.00 |
| Past, present, and future mental anguish and emotional distress | $5,000.00 |
| TOTAL TO CHASITY OZENNE | $16,036.00 |
| <u>To Sharon Baham</u> for pain and suffering before her death | $0.00 |

To Keith Baham
Loss of love and affection, loss of
companionship and guidance, and grief
and mental anguish
$210,000.00

Loss of services and support
$0.00

Funeral expenses and medical expenses
$9,081.00

TOTAL TO KEITH BAHAM
$219,081.00

To Chad Baham
$50,000.00

To Sheri Baham Cormier
$50,000.00

To Narcisse Thibodeaux
Past, present, and future medical
expenses
$17,577.95

Past, present, and future pain and
suffering
$50,000.00

Past, present, and future mental anguish
and emotional distress
$25,000.00

Past, present, and future lost wages
$42,000.00

TOTAL TO NARCISSE THIBODEAUX
$134,577.95

To Roma Thibodeaux
$5,000.00

The judgment, in accordance, with the jury's verdict, reduced all amounts by the thirty percent of fault attributable to Mrs. Baham.

The Baham Plaintiffs appeal, asserting that the damages awarded to Chad and Sheri for the loss of their mother were inadequate and that the jury erred in failing to award any amount to Mr. Baham for loss of services and support. The Johnson Plaintiffs also appeal, seeking an increase in all damages awarded. Finally, DOTD appeals, asserting errors in the jury instructions, evidentiary errors, and that the allocation of fault was manifestly erroneous. The Thibodeaux Plaintiffs did not appeal the jury's verdict.

4

**DISCUSSION**

*Evidentiary Matters*

We first consider DOTD's argument that the trial court committed an error of law by allowing Plaintiffs to introduce computer-generated photographs of the accident scene into evidence. Dean Tekell, an expert in the field of traffic engineering who testified on behalf of Plaintiffs, used the computer-generated photographs during his testimony, ostensibly to illustrate his opinion as to the proper placement of the detour sign. DOTD contends that these "photographs" were not relevant to the issue of whether the signage at the intersection in question created an unreasonably dangerous condition and that they misled the jury.

We note that Mr. Tekell testified that he used the actual photographs of the accident scene and had a copy service generate the "photographs" in question using dimensions of the detour sign and stop sign that he gave them. When Mr. Tekell began testifying concerning the "photographs," DOTD's counsel objected and was allowed to traverse the witness. The trial court then instructed the jury that: "this is clearly not an actual photograph, but it is an altered photograph for the purposes of testimony." When the computer-generated photographs were shown to the jury, they were placed side-by-side with the actual photographs.

We consider these computer-generated photographs to be more in the nature of a chart or diagram than of an actual photograph. The trial court has much discretion in determining the relevancy of evidence, and we "must place great weight on a trial court's ruling of relevancy of evidence and should not reverse such a ruling in the absence of a clear abuse of discretion." *Strawder v. Zapata Haynie Corp.*, 94-453, p. 7 (La.App. 3 Cir. 11/2/94), 649 So.2d 554, 559-60. We agree with the trial court's finding that the computer-generated photographs were relevant to the issues

5

in this case. Further, based on the cautionary instructions given by the trial court and Mr. Tekell's testimony concerning the creation of the exhibits, we do not find that there was any prejudice to DOTD or any confusion to the jury by the admission of these computer-generated photographs into evidence. In sum, the trial court did not abuse its wide discretion in admitting this evidence.

*Jury Instructions*

As we consider DOTD's specific arguments on its three assignments of error regarding the trial court's instructions to the jury, we are mindful of the legal principles that guide our review in this respect.

> A trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Courts are not obligated to give the specific jury instructions submitted by the parties, but omission of a requested instruction containing an essential legal principal [sic] may constitute reversible error.

*Square v. LeBlanc*, 04-1500, p. 10 (La.App. 3 Cir. 6/1/05), 903 So.2d 1178, 1185, *writ denied*, 05-1746 (La. 1/13/06), 920 So.2d 240 (quoting *Mathews v. Dousay*, 96-858, p. 8 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 509-10), (citations omitted) (alteration in original).

> Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. *Melancon v. Sunshine Const., Inc.*, 97-1167 (La.App. 1 Cir. 5/15/98), 712 So.2d 1011. The basis for this rule of law is that trial courts are given broad discretion in formulating jury instructions and it is well accepted that a trial court judgment will not be reversed so long as the charge correctly states the substance of the law. *United States v. L'Hoste*, 609 F.2d 796, 805 (5 Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. *Smith v. Travelers Ins. Co.*, 430 So.2d 55 (La.1983). In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if they adequately provide the correct principles of law as applied to the issued framed in the pleadings and evidence and whether they adequately guided the jury in its deliberation. *Kaplan v. Missouri-Pacific R.R. Co.*,

409 So.2d 298, 304-05 (La.App. 3 Cir.1981). Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. *Brown v. White*, 405 So.2d 555, 560 (La.App. 4 Cir.1981), *aff'd*, 430 So.2d 16 (La.1982).

*Nicholas v. Allstate Ins. Co.*, 95-2522, p. 8-9 (La. 8/31/00), 765 So.2d 1017, 1023.

Moreover, we recognize that although misleading or confusing interrogatories may constitute reversible error, the manifest error standard of appellate review still applies except in a case where the jury interrogatories are so inadequate or incorrect that the jury is precluded from reaching a verdict based on the law and the facts. *Doyle v. Picadilly Cafeterias*, 576 So.2d 1143 (La.App. 3 Cir. 1991). For the reasons that follow, we do not find that exception to be applicable in this case. Thus, we decline to review the verdict de novo as requested by DOTD.

The following assignments of error are asserted by DOTD regarding the trial court's instructions to the jury:

1. The trial court committed an error of law by failing to instruct the jury that DOTD's duty is only to see that the state's highways are reasonably safe for persons exercising ordinary care and reasonable prudence.

2. The trial court committed an error of law by re-instructing the jury after they had returned a partial inconsistent verdict.

3. The trial court committed an error of law by instructing the jury that under the facts of this case, DOTD was not entitled to notice of defect and a reasonable opportunity to correct.

First, DOTD contends that the jury instructions failed to include an instruction that limited its duty to providing highways that are reasonably safe for persons exercising ordinary care and reasonable prudence. In so contending, DOTD seems to suggest that it owes no duty to a negligent party. We do not agree. "The law is clear that municipalities have a duty to keep roads safe for *both* prudent and imprudent, inattentive drivers and their passengers." *Molina v. City of New Orleans*,

7

01-1411, p. 5 (La.App. 4 Cir. 10/2/02), 830 So.2d 994, 998-99, *writ denied*, 03-573 (La. 3/28/03), 840 So.2d 573

The trial court instructed the jury as to both the duty owed by DOTD and the duty owed by Mrs. Baham. With respect to DOTD's duty, the trial court stated, in part: "The department's duty to the public is to keep the roadways of the state in a reasonably safe condition, and whether the department has failed in this duty depends on the facts and circumstances of each case." With respect to Mrs. Baham's duty, the trial court quoted from La.R.S. 32:123 and added:

> A driver has a general duty to operate the vehicle with reasonable care under the prevailing circumstances for the benefit of guest passengers who might be injured if the driver fails to do so, and the driver has the general duty to exercise reasonable care in the operation of their vehicles, which duty encompasses the obligation to maintain a proper lookout and control of their vehicle and lookout for hazards which, by use of ordinary care and observation, one should be able to see."

While we do recognize that the duty owed by DOTD does not include "the obligation to protect a plaintiff against harm which would not have occurred but for the grossly negligent operation of the motor vehicle by plaintiff," we do not find that the jury instructions in this case were erroneous. *Menard v. City of Lafayette*, 01-4, p. 4 (La.App. 3 Cir. 5/31/01), 786 So.2d 354, 357 (quoting *Burge v. City of Hammond*, 590 So.2d 151, 156 (La.App. 1 Cir.), *writ denied*, 513 So.2d 285 (La.1987)). In *Burge*, the first circuit held that the DOTD's "duty to maintain highways in a reasonably safe condition which includes adequate signing and signaling does not extend to the risk of a plaintiff whose injury is caused by her own gross negligence and inattention to a properly working, clearly visible, traffic signal." *Id*. In this case, there is no evidence that Mrs. Baham was grossly negligent. We also note that the jury found her to be thirty percent at fault such that it does not appear that the jurors were confused as to the issue of any duty imposed on her. Considering the charge as

8

a whole, we find that it "adequately provided the correct principles of law" as to the duties of the parties and did not "mislead the jury to the extent that it was prevented from dispensing justice." *Nicholas*, 765 So.2d at 1023. This assignment of error is without merit.

Second, DOTD argues that the trial court improperly instructed the jury when it came back with an inconsistent verdict such that the "scales were impermissibly tipped in favor of the plaintiffs." The jury presented a question to the trial court regarding question number two on the verdict form, which asked whether the jury found that DOTD had actual or constructive notice of a defect which created an unreasonable risk of harm at the site of the accident. The jury apparently wanted to have the question explained to them. The jury instructions included a statement that the claimant bore the burden of proving that DOTD had "actual or constructive notice of the defect and failed to take corrective measures within a reasonable time," but there was no follow-up instruction explaining the concepts of actual and constructive notice. The parties argued for a considerable length of time concerning how the court should respond to that question, and, before an agreement could be reached, the jury returned with a verdict which found that the signage at the accident scene was defective and created an unreasonable risk of harm, that DOTD did not have actual or constructive notice of the defect, and that DOTD was seventy percent at fault. The trial court then explained to the jury that its answer to question number two was inconsistent with its finding of fault on the part of DOTD. The trial court then went on to instruct the jury as to actual and constructive notice, and the trial court told the jury to return to the jury room and re-deliberate its answer to question number two and then to follow the instructions on the verdict sheet again. The jury returned with a verdict which answered question number two in the affirmative.

9

Upon recognition of the jury's inconsistent verdict, the trial court was not required to order a mistrial. Instead, the trial court had discretion, which it appropriately exercised, to return the jury for "further consideration of its answers." *Fleming v. Acadiana Geophysical Serv., Inc.*, 02-264, p. 7 (La.App. 3 Cir. 10/2/02), 827 So.2d 623, 630, *writ denied*, 02-2717 (La. 1/10/03), 834 So.2d 440. This court has recognized that even after the jury has retired, the trial court "may recall them to correct or withdraw an erroneous instruction, to clarify an ambiguous instruction, to inform them on a point of law, which should have been covered in the original instructions, or to give such further instructions as may be appropriate." *Id*. In this case, we find that the trial court correctly instructed the jury as to the applicable law concerning actual and constructive notice, which instruction may well have been more properly given during the original instructions to the jury before it retired for deliberations.

DOTD contends that "the timing and language of the [c]ourt's instructions were an endorsement of assessing fault to DOTD, in spite of the factual determination which precluded any liability" and was tantamount to telling the jury to change its verdict. We do not agree. There was no improper comment on the evidence in violation of La.Code Civ.P. art. 1791. The trial court in this case did not comment on or recapitulate the evidence; repeat the testimony of any witness; or give any opinion as to what had been proven, not proven, or refuted. *Id*. What the trial court did in this case was little more than instruct the jury to re-read the instructions on the jury form:

> Okay. I'll do my best here to try to explain to you-all what needs to happen from here. There are two[1] inconsistencies in the verdict form

---

[1]The first inconsistency was that the damages awarded to the Baham Plaintiffs did not add up correctly with the total amount of damages indicated on the verdict form. The trial court instructed the jury that it had to either check its addition or decide whether the total amount listed was the amount it really meant to award. This portion of the instruction is not contested on appeal.

that I need to explain to you, and then you're going to have to go back and re-deliberate on those issues.

. . . .

The answer to question No. 2 is inconsistent with your finding of fault on the part of DOTD. They're not consistent. One explanation would be that you . . . need to have question No. 2 explained; so I'm going to do that.

. . . .

You need to go back now and reconsider, re-deliberate question No. 2, and then follow the instructions again . . .

Therefore, this assignment of error is without merit.

Third, DOTD contends that the trial court erred in instructing the jury that under the facts of this case, DOTD was not entitled to notice of defect or a reasonable opportunity to correct. Plaintiffs contend that, because DOTD created the defect, they are not required to prove notice. Based on *Whatley v. City of Winnfield*, 35,132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, *writ denied*, 02-15 (La. 3/22/02), 811 So.2d 939, the trial court instructed the jury as follows:

The requirement of notice to the department is inapplicable in a case where the dangerous condition is attributable to negligent acts of the department or its employees. Only where the negligence relied on is in the failure to repair a defective condition not caused by its own act or neglect is the question of notice an essential element. When the department creates a defective condition by its own substandard conduct, it is presumed to have notice or knowledge of the hazardous condition.

In Whatley, the negligent act was leaving a water main cover out of place. DOTD argues that Whatley is inapplicable because, in that case, the negligent act created the physical hazard in and of itself. But, in this case, DOTD argues that the "placement of a single stake, directing the future installation of one detour sign in an array of signs" did not "create" a physical hazard. We do not agree with DOTD's narrow interpretation of *Whatley* and find this assignment of error to be without merit.

11

*Allocation of Fault*

Next, DOTD argues that the jury was misled to assess liability by the flawed jury instructions discussed above. As we have already determined that the jury instructions were adequate and not misleading, we turn to DOTD's argument that in light of the evidence presented at trial, the jury was manifestly erroneous in finding it seventy percent at fault and in finding Mrs. Baham only thirty percent at fault. In resolving this issue, we must give great deference to the allocation of fault as determined by the trier of fact. *Cole v. State ex rel. Dept. of Transp. & Dev.*, 99-912 (La.App. 3 Cir. 12/22/99), 755 So.2d 315, *writ denied*, 00-199 (La. 4/7/00) 759 So.2d 766. We are compelled to utilize the standards set forth in *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985):

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

Mrs. Baham had a duty to use reasonable care in the operation of her vehicle. We agree with DOTD that she was put on notice that she was approaching an intersection by the stop ahead sign. Any inattentiveness on her part was, therefore, a breach of her duty. The scope of her duty included the risk that her guest passengers might be injured in an accident. *Cole*, 755 So.2d 315. Therefore, we find that Mrs. Baham's negligence was a substantial factor in causing the accident and its resulting injuries.

DOTD, however, also owed a duty to Plaintiffs to maintain highways in a reasonably safe condition, which includes adequate signing and signaling. DOTD designed and implemented the plan for the detour of traffic around the construction project on the road in question. Sergeant Roland Lewis of the Duson City Police

12

Department testified that the stop sign was obscured for twenty to thirty seconds by the detour sign. Mr. Tekell testified that the detour sign was placed in an improper place according to the Manual on Uniform Traffic Control Devices (MUTCD). It was Mr. Tekell's opinion that the sign was placed in advance of the intersection when it should have been placed adjacent to the stop sign at the intersection.

Considering all of the evidence, we cannot say that the jury's decision to apportion fault to both Mrs. Baham and DOTD was clearly wrong. Therefore, we affirm the jury's allocation of seventy percent of the fault to DOTD and thirty percent of the fault to Mrs. Baham.

*Damages*

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260-61 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994), the Louisiana Supreme Court set forth the standard by which we must abide in reviewing a trial court's award of general damages:

> The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976); *Bitoun v. Landry*, 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La.1974).

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), and through *Reck* to the present case is that [T]he discretion vested in the trier of fact is "great, and even vast, so that an appellate court should rarely disturb an award

of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Thus, it is not for us to decide what we consider to be an appropriate award. Rather, we must review the exercise of discretion by the trier of fact and "review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions." *Monk v. State ex rel. DOTD*, 05-97, p. 8 (La.App. 3 Cir. 6/29/05), 908 So.2d 688, 694, *writ denied*, 05-2337 (La. 10/17/06), ___ So.2d ___.

### A. Baham Plaintiffs' Damages

In their appeal, the Baham Plaintiffs assert two assignments of error. First, Chad Baham and Sheri Cormier Baham, the adult children of Mrs. Baham, contend that the jury's awards of $50,000.00 to each of them for their loss of consortium were inadequate. We disagree. The jury's awards were well within the range of similar awards. *See Turner v. Lyons*, 03-0186 (La.App 4 Cir. 1/28/04), 867 So.2d 13, *writ denied*, 04-741 (La. 5/14/04), 872 So.2d 530. At the time of the accident, Chad was eighteen and still living at home. Sheri was twenty-one, married, and living nearby. Both testified that their mother was very involved in their daily lives. The family still had Sunday dinners together. DOTD does not contest the closeness of the children's relationship with their mother. We find no abuse of discretion in the jury's awards of $50,000.00 to each of Mrs. Baham's adult children and they are, therefore, affirmed.

Next, Mr. Baham argues that jury erred in failing to award him damages for loss of services and support. Sheri testified that at the time of her death, Mrs. Baham was employed at Opelousas General Hospital as a housekeeper and that she enjoyed

14

her job. Plaintiffs had retained the services of Dr. Douglas Womack, an expert economist, to testify as to Mr. Baham's economic loss; however, Dr. Womack did not testify at trial in this respect. Instead, the parties stipulated that if Dr. Womack was called to testify as to Mr. Baham's economic loss, he would say that "the total loss of services to the family and future income or future support of Mrs. Baham would be $193,000.00." The W-2 records were introduced into evidence. "It is well settled that a plaintiff's uncorroborated testimony is sufficient to prove lost wages as long as the testimony is uncontradicted and reasonably establishes the claim." *Molina*, 830 So.2d at 1002, (citing *Richard v. Teague*, 92-17 (La.App. 3d Cir. 5/4/94), 636 So.2d 1160, *writ denied*, 94-1934 (La. 11/11/94), 644 So.2d 388). Thus, we find that the jury abused its discretion in failing to award any amount for loss of services and support. We, therefore, amend the judgment to reflect an award of $193,000.00 to Mr. Baham for his loss of services and support from the death of his wife.

*B.     Johnson Plaintiffs' Damages*

The Johnson Plaintiffs appeal several damage awards, asserting that they are inadequate. First, the Johnson Plaintiffs contend that the jury erred in failing to award adequate general damages to Holden Johnson in light of the amount of past and future medical expenses awarded. We agree. Holden , who was four years old at the time of the accident, suffered traumatic injuries to his brain and face. He required thirteen surgeries to repair the extensive damage and was left with scarring. Dr. Stephen E. Metzinger, a plastic surgeon who treated Holden, testified that Holden's injuries represented "the worst pediatric facial trauma injury that [he] had ever seen in his career, which dates back to 1987." Holden had some teeth which were avulsed (or knocked out) and some that were loose. The loose teeth had to be wired into place. Some teeth were saved, but others were lost. Surgery was also required to

attempt to correct facial asymmetry that resulted when some of the facial bones that were injured did not grow as fast as the ones that were not injured. Dr. Metzinger also opined that Holden's pituitary gland was damaged in the accident. Dr. Metzinger further testified that Holden faces several more surgeries in the future as his nasal bone graft reabsorbs, for further scar revision, and for muscle transfer to attempt to get better functioning at the corner of his mouth. Dr. Metzinger also testified that Holden can never play contact sports, can never high dive or scuba dive, and must wear protective eyewear for participation in non-contact sports. His visual impairments may prevent him being able to drive when he is older. Holden's treating psychiatrist, Dr. Joni Orazio, testified that Holden has organic brain syndrome, attention deficit disorder, and seizure disorder. We, therefore, increase the award for past, present, and future pain and suffering from $50,000.00 to $250,000.00. For past, present, and future mental anguish and emotional distress, we increase the award from $50,000.00 to $100,000.00. Finally, for scarring and disfigurement, we increase the award from $50,000.00 to $100,000.00.

The Johnson Plaintiffs also assert that the jury erred in failing to award any amount for Holden's loss of earning capacity. Other courts have recognized:

> Even young children are entitled to an award for loss of earning capacity. See *Williams v. City of Monroe, supra*. (award for loss of earning capacity to a six-year old affirmed); *Hollingsworth v. Bowers*, [96-257 (La.App. 3d Cir.12/30/96), 690 So.2d 825] (award for loss of earning capacity for newborn affirmed); *Jackson v. Huang*, 514 So.2d 727 (La.App. 2d Cir.1987), *writs denied*, 518 So.2d 1050, 519 So.2d 119 (La.1988) (award for loss of earning capacity for newborn affirmed).

> Awards for lost income are speculative and cannot be calculated with absolute certainty. *Williams v. City of Monroe, supra*. The trial court is accorded broad discretion in assessing them, but there must be a factual basis in the record for the award. *Id*.

> Credibility determinations, including the evaluation of expert testimony, are factual issues to be resolved by the trier of fact. *Stobart*

*v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Orea v. Scallan*, 32,622 (La.App.2d Cir.1/26/00), 750 So.2d 483; *Nichols v. Nichols*, 32,219 (La.App.2d Cir.9/22/99), 747 So.2d 120. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court may feel that its own evaluations and inferences are more reasonable than those of the jury. *Stobart v. State, Through DOTD, supra.*

*Hammock ex rel. Thompson v. Louisiana State Univ. Med. Ctr. in Shreveport*, 34,086, pp. 6-7 (La.App. 2 Cir. 11/1/00), 772 So.2d 306, 311-12.

Given that the testimony of Dr. Douglas Womack and Glenn Hebert is necessarily based almost wholly upon speculation due to Holden's young age and the vast discretion of the jury, who had the advantage of seeing and hearing the witnesses at trial, we cannot say that the jury abused that discretion in failing to award any amount for Holden's loss of earning capacity.

The Johnson Plaintiffs next argue that the jury's total awards of $10,000.00 each to Seth Johnson and Chasity Ozenne for past, present, and future mental anguish and past, present, and future pain and suffering were inadequate. We do not agree. Seth had multiple facial abrasions and a scalp laceration that required stitches. He was required to stay overnight in the hospital. He did receive psychological counseling after the accident. Chasity suffered a broken right humerus in the accident. Given the testimony concerning the injuries to Seth and Chasity, we find that the jury's award was well within the range of similar awards. Finding no abuse of discretion, we affirm these awards.

Finally, Mr. and Mrs. Johnson assert that the jury's awards of $25,000.00 to each of them for their losses due to the injuries to their children were inadequate. We do not agree and find that $25,000.00 falls within the range of similar awards to parents for serious injuries suffered by their minor children. Therefore, these awards are affirmed.

**DECREE**

For the reasons stated above, we increase the award to Keith Baham for his loss of services and support from $0.00 to $193,000.00. To Holden Johnson for his past, present, and future pain and suffering, we increase the award from $50,000.00 to $250,000.00; for his past, present, and future mental anguish and emotional distress, we increase the award from $50,000.00 to $100,000.00; and for scarring and disfigurement, we increase the award from $50,000.00 to $100,000.00. In all other respects, we affirm the judgment on the jury's verdict.

**AFFIRMED AS AMENDED.**